## Emmett Green v. The State.

### No. 1597.　Decided April 10, 1912.

### Rehearing Denied May 8, 1912.

**1.—Robbery—Evidence—Bill of Exceptions—Leading Questions.**

Where, upon appeal from a conviction of robbery, the record showed that the defendant objected to certain questions by the district attorney as being leading in their character because they suggested the answer, but the bill of exceptions failed to show whether any or all of the exceptions permitting leading questions might not have applied, the matter could not be reviewed. Following Conger v. State, 63 Texas Crim. Rep., 312. Davidson, Presiding Judge, dissenting.

**2.—Same—Evidence—Declaration of Third Party.**

Upon trial of robbery, there was no error in admitting testimony that the witness had a conversation with the party alleged to have been injured on the night of the alleged robbery sometime thereafter, and that said party charged defendant with robbing him, as the defendant had attacked the credibility of the party alleged to have been injured on the ground that he had made contradictory statements.

**3.—Same—Charge of Court—Omissions.**

Where no special charges were requested to cure the supposed omission in the court's main charge, and said charge followed the terms of Article 1327, Revised Penal Code, and no injury was shown, there was no error.

**4.—Same—Charge of Court.**

Where, upon trial of robbery, the court, in his charge properly submitted to the jury the issues raised by the evidence, there was no error.

**5.—Same—Charge of Court—Date of Offense.**

Where, upon trial of robbery, the evidence showed that the same took place upon a certain date, and the court's charge limited the offense to such date, there was nothing in the criticism that the court's charge should have told the jury that the offense must have been committed before the filing of the indictment.

**6.—Same—Charge of Court—Venue.**

Where upon trial of robbery, the court properly submitted the venue of the offense in his charge to the jury, there was nothing in the contention that the court had failed to do so.

**7.—Same—Charge of Court—Permanent Appropriation.**

Where, upon trial of robbery, the court charged the jury that there must be a permanent appropriation of the alleged property before they could convict defendant, there was nothing in the contention that the court had failed to do so:

**8.—Same—Sufficiency of the Evidence.**

Where, upon trial of robbery, the evidence sustained the conviction, there was no reversible error.

**9.—Same—Nelwy Discovered Evidence.**

Where the alleged newly discovered evidence was not such as to authorize a new trial, there was no reversible error.

**10.—Same—Indictment—Putting in Fear of Life, etc.**

Where, upon trial of robbery, the indictment charged that the defendant did then and there unlawfully and wilfully make an assault upon N. S., and then and there, by the said assault and by violence to the said N. S., and by putting the said N. S. in fear of life and bodily injury and then and there, by using and exhibiting a firearm to wit, a pistol, did then and there fraudulently take from the possession of said N. S. without the consent and against the will of the said N. S., etc., the same was sufficient. Overruling Murdock v. State, 52 Texas Crim. Rep., 262. Davidson, Presiding Judge, dissenting.

**11.—Same—Indictment—Duplicity.**

Where, upon trial of robbery, the indictment contained the necessary allegations so as to authorize the infliction of the higher penalty, the same was not duplicitous and did not charge two separate and distinct offenses. Distinguishing Heineman v. State, 22 Texas Crim. App., 44; Hickman v. State, 22 Texas Crim. App., 441.

Appeal from the District Court of Robertson. Tried below before the Hon. J. C. Scott.

Appeal from a conviction of robbery with firearms, etc.; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Morehead & Perry,* for appellant.—On the question of permitting leading questions: Davis v. State, 43 Texas, 189, and cases cited in dissenting opinion.

Upon question of declarations of third party: Anderson v. State, 14 Texas Crim. App., 51; Caddell v. State, 49 Texas Crim. Rep., 133.

On question of the court's charge on the weight of evidence: Walker v. State, 42 Texas, 360; Howard v. State, 18 Texas Crim. App., 348.

On the question as to what constitutes robbery by the use of firearms: Higgins v. State, 19 S. W. Rep., 503; Murdock v. State, 52 Texas Crim. Rep., 362, 106 S. W. Rep., 374; Glenn v. State, 49 Texas Crim. Rep., 349, 92 S. W. Rep., 806; Winston v. State, 9 Texas Crim. App., 143; Skipworth v. State, 8 id., 135; 24 Am. & Eng. Ency. of Law, p. 1003.

On question of newly discovered evidence: Townshed v. State, 22 S. W. Rep., 405; Hines v. State, 37 Texas Crim. Rep., 339; Owens v. State, 35 id., 345; Young v. State, 30 Texas Crim. App., 308; Barbee v. State, id., 669; Estrada v. State, 29 Texas Crim. App., 169; Clark v. State, id., 437; Reed v. State, 27 id., 317.

*C. E. Lane,* Assistant Attorney-General, for the State.

PRENDERGAST, JUDGE.—The appellant was convicted or robbery of Nelse Shanklin with firearms and given the lowest penalty, five years in the penitentiary.

The State, by three witnesses, proved this state of facts: On the first Sunday night in May, 1910, the appellant and Nelse Shanklin and other negroes were gambling at appellant's house. Said Shanklin won $14.25 in silver from appellant. During the game Shanklin gave to Willie Emmerson, who had staked Shanklin in the beginning of the game, $5 of the money he had won from appellant. At the conclusion of the game Shanklin had $5 of the won money in his vest pocket and had picked up the last $4.25 which he won from appellant at the end of the game. Appellant announced to Shanklin that he, Shanklin, had won. Thereupon appellant raised up on his knees with a pistol in his hand and said to Shanklin, "Chuck that money over here." Shanklin then had $4.25 of the money in his hands and $5 in his pocket. Shanklin replied, "No; this money is mine. I have won it fairly and I will not give it to you." Appellant said, "Chuck it over." Shanklin testified that he thought he had better chuck it to him and shoved the $4.25 to him. Appellant then said, "You have got some more of that money in your pocket; chuck that over, too." Shanklin replied, "Emmett, if anybody had told me that you would treat me this way, I would not have believed it." Appellant said, "Chuck it over, I've got to have this money to turn in; I'll pay it back." Shanklin said, "You ought not to treat me this way at your own house." Appellant then cocked the pistol and Shanklin took the $5 out of his pocket and shoved that to him, too. Appellant took the $9.25 from him. Shanklin testified that he did not give it to him willingly and that he took it from him without his consent.

The same testimony substantially was given by Willie Emmerson and Garland Hamner, who were present at the game.

In addition to this, Willie Emmerson testified that as soon as said Shanklin had chucked or thrown the money to appellant, as shown above by the testimony of Shanklin, that appellant at once said to Emmerson, "You chuck that money over that Nelse gave you," and that he did so. This all occurred at the same time and immediately after what Shanklin testified had occurred to him.

Appellant did not testify, but he introduced witnesses who more or less disputed the testimony of the State's witnesses. It appears from all the testimony that his claim is that he did not rob said Shanklin, but that after Shanklin had won the money from him he won it back from Shanklin in playing another game, which they call "thirty-six's." This game is not fully described by the testimony, but from it we gather that the card game with "thirty-six's" was with appellant's cards and that it was a swindling or fraudulent game. Shanklin and the said two other State witnesses disputed this.

By appellant's bill of exceptions Nos. 1 and 2 he complains that when the State's witness, Nelse Shanklin, was on the stand he was asked the following questions, to wit: "You did not give him the

money willingly, did you? and he did not have your consent to take the money, did he?" To both of which questions the witness answered "No." When the questions were asked, appellant objected thereto; that they were illegal and inadmissible, because leading and could be answered yes or no, and suggest the answer which the witness was expected and desired to give. The other bill is to substantially the same questions to Willie Emmerson, the same answer and the same objections.

What is stated of these bills is substantially all of them. They are wholly insufficient to show any reversible error, or any error at all. Carter v. State, 59 Texas Crim. Rep., 73; Henderson v. State, 5 Texas Crim. App., 134; Montgomery v. State, 4 Texas Crim. App., 140; Rodriguez v. State, 23 Texas Crim. App., 503; Moore v. State, 37 Texas Crim. Rep., 552; Hamilton v. State, 41 Texas Crim. Rep., 599; Conger v. State, 63 Texas Crim. Rep., 312, 140 S. W., 1112.

By appellant's bill No. 3 it is shown that while the State's witness, Jesse Shanklin, was on the stand he was permitted to testify over appellant's objection that he had a conversation with his brother, Nelse Shanklin, on the night of the alleged robbery after he had come from the home of Emmett Green (appellant) and that in said conversation Nelse Shanklin told him (the witness Jesse) that the defendant, Emmett Green, had taken the money from him by threatening him with a pistol. Appellant's objections to this testimony were that it was hearsay and shows that the witness was not testifying from his personal knowledge of the facts, but solely from information derived from others. The court, in approving the bill, did so, with this qualification: "That as a part of defendant's testimony in the case, he placed upon the stand a witness by the name of Sonny Stanchel, who in answer to questions of defendant's counsel testified that about 12 o'clock on the night of the alleged game of cards and robbery Jesse Shanklin (brother of prosecuting witness) came to his house and stated to him that his brother (Nelse Shanklin) had just told him, that in a game of cards at the home of Emmett Green, Emmett Green had robbed him, Nelse Shanklin, out of some money with 'thirty-six's,' and wanted him, Stanchel, to go and make Emmett Green give the money back to his brother." This is in substance the whole of the bill. It is wholly insufficient. See authorities above cited. But even upon consideration of it, we are of the opinion that it does not present error. Certainly, the State had the right to introduce this witness to dispute, as he did, the appellant's witness, as shown by the qualification of the judge. Again, the attempt was made by the appellant, and much testimony introduced, impeaching the testimony and credibility of the State's principal witness, Nelse Shanklin, and tending to show that he made contradictory statements from his testimony on this trial. Under such circumstances it is unquestionably the rule in this State that either side can

support the testimony of such attacked witness by showing that shortly after the transaction, he made statements of the matter similar to his evidence delivered on the trial. For authorities on this proposition see subdivision 4, section 1119, p. 729, of White's C. C. P.; and section 874, p. 556, of Branch's Criminal Law of Texas.

In the amended motion for new trial several complaints are made of the charge of the court. No exception was taken to the charge at the time it was given nor did appellant ask any special charge on the subject to cure any supposed omission or commission in the charge. One of the objections to the charge is, that the court told the jury that if they found the defendant guilty they should assess his punishment by death or by confinement in the penitentiary for a term of years not less than five. This is the statute, Penal Code, 1327 (new). Besides, the jury gave him the lowest term under any phase of the law and he could not have been and was not injured.

He also complains of the fifth paragraph of the charge wherein he claims the court set out and described the manner in which Nelse Shanklin came into possession of the money, and in alluding to the gambling game, because it was on the weight of the evidence, and because defendant made no claim to the money nor any claim to the ownership and possession thereof, and that said charge was calculated to and doubtless did mislead the jury to defendant's hurt. None of these criticisms are well taken. The court properly submitted to the jury the issues raised by the testimony, which is always correct.

There is nothing in another criticism of the charge of the court claiming that the court ought to have told the jury that they must find that the offense was committed before the filing of the indictment and not subsequent thereto. The indictment was found January 12, 1911, charging the offense to have been committed on or about May 1, 1910. All of the testimony was to the transaction that occurred on or about the first Sunday in May, 1910, and at no other time. The court in submitting the case for a finding told the jury that "if they believed beyond a reasonable doubt that the appellant on or about the first day of May, A. D. 1910, in the county of Robertson," etc. No possible injury could have occurred to the appellant for anything that occurred after the indictment was found.

Neither is there anything in appellant's next complaint that the court erred in failing to require the jury to believe that the offense was committed in Robertson County, for the charge just above quoted specifically required that.

The next complaint is that the court erred in the seventh paragraph of the charge, because it authorized a conviction, even though defendant at the time of taking the money, if any, did not intend to permanently deprive Nelse Shanklin of the use and benefit thereof, but intended afterwards to repay him. The court specifically charged that, "even though they may believe that appellant presented a pistol at or towards Nelse Shanklin and took from his possession and person

the money described in the indictment without the consent of said Shanklin, but if they believed that at the time he took it, if he did, he did not intend to permanently appropriate it to defendant's use and benefit, or if they had a reasonable doubt as to what his intent was to acquit him." In addition the court gave the general charge of presumption of innocence and reasonable doubt, and still, after submitting the case to the jury for its finding, and requiring all of the requisites necessary to show him guilty, stated: "If you have a reasonable doubt of the existence of the above alleged state of facts, or any of them, you will acquit the defendant." Appellant's rights in this regard were protected by the court in every particular.

Neither is there any merit in appellant's contention that the evidence is insufficient to sustain the verdict. The evidence was ample and clearly sufficient, even though disputed by appellant's witnesses.

The only other ground set up by appellant is, his claim that a new trial should have been granted because of newly discovered evidence. We have recently had this question under consideration in the case of Gray v. State, 144 S. W., 284, and in accordance with all the uniform authorities, in that case, said:

"Article 817, Code Criminal Procedure (old), prescribes: 'New trials in cases of felony shall be granted for the following causes and for no other.' Subdivision 6 thereunder, giving these grounds, is: 'Where new testimony material to the defendant has been discovered since the trial, a motion for new trial based on this ground shall be governed by the same rules as those which regulate civil suits.'

"It is well established by the decisions of this court that a motion for new trial on this ground is closely scrutinized, and is largely confided to the discretion of the trial court; and the disposition there made of it will not be disturbed on appeal, unless it be apparent that the trial court abused its discretion to the prejudice of appellant. Burns v. State, 12 Texas Crim. App., 394; Templeton v. State, 5 Texas Crim. App., 398; Shaw v. State, 27 Texas, 750; West v. State, 2 Texas Crim. App., 209; Terry v. State, 3 Texas Crim. App., 236.

"It is also well established that in a motion for new trial on this ground it is incumbent on the appellant to satisfy the court (1) that the evidence has come to his knowledge since the former trial; (2) that it was not owing to want of due diligence on his part that it was not discovered and did not come to his knowledge before the trial; (3) that it is competent and material evidence and not merely cumulative, corroborative or collateral; (4) that it will probably produce a different verdict if a new trial is granted; (5) that it is not simply for the purpose of impeaching a former witness. If the application is defective in establishing any one of these essentials, a new trial should be refused. Fisher v. State, 30 Texas Crim. App., 502, 18 S. W. Rep., 90; West v. State, supra; White v. State, 10 Texas Crim. App., 167; Shaw v. State, supra; Duval v. State, 8

Texas Crim. App., 370; Gross v. State, 4 Texas Crim. App., 249; Hutchinson v. State, 6 Texas Crim. App., 468."

We have carefully gone over the grounds of the motion for new trial and the affidavits attached thereto, and are clearly of the opinion that the court did not err in refusing a new trial on this ground.

We have carefully gone over and studied the whole record and the forcible brief of the appellant's able attorneys and are of the opinion that no reversible error has been pointed out. The judgment will, therefore, be affirmed.

*Affirmed.*

ON REHEARING.

May 8, 1912.

PRENDERGAST, JUDGE.—Appellant in his motion for rehearing again presents some of the same questions which were thoroughly considered before the original opinion was rendered in this cause. He presents no authorities that were not then considered. We think there is nothing in these questions that calls for any further special discussion, except about the appellant's bills of exceptions as to what he claims were leading questions asked by the district attorney of the State's witnesses, Nelse Shanklin and Willie Emmerson. Under all the rules each of these bills are clearly insufficient to require this court to pass upon the questions attempted to be raised. The rules of what is necessary for bills of exceptions to show are fully laid down and the authorities cited by Judge White in section 857, p. 557, and section 1123, p. 732, in his Annotated Code Criminal Procedure. Judge White also in section 1105, pp. 719, 720, lays down the rules and cites the cases wherein leading questions are permissible and, where even asked and permitted to be answered, are not reversible error. It may be that the questions complained of by appellant by these two bills are leading, but neither presents the matter in such a way, as shown by the authorities cited and those cited on that point in the original opinion, so as to show whether any or all of the exceptions permitting leading questions may not have applied.

However, he does raise a new question, not raised in the court below, nor anywhere by his brief or otherwise, nor in any way called to our attention or noticed by us, until the filing of his motion for rehearing.

That new question is: he claims the indictment herein is wholly void and insufficient, because it is vague, uncertain and indefinite, and duplicitous, and charges appellant in the same count with the commission of a capital and common felony, contrary to law.

It is our opinion that even if the indictment was duplicitous, as claimed by appellant, he not having made any motion to quash it before verdict found, under the authorities, waived such defect. Nicholas v. State, 23 Texas Crim. App., 377; Coney v. State, 2 Texas Crim. App., 62; Tucker v. State, 6 Texas Crim. App., 251; Rum-

mage v. State, 55 S. W. Rep., 64, and the authorities cited in the opinion in said cases.

However, we do not dispose of this question on this point alone, because it is an important one, and calls for a decision directly on the question. The appellant cites only the case of Murdock v. State, 52 Texas Crim. Rep., 262, to support his contention. This is the only case supporting appellant's contention we have been able to find, after the most diligent search. The only statute we have defining robbery is Penal Code, article 1327 (856):

"If any person by assault, or violence, or by putting in fear of life or bodily injury, shall fraudulently take from the person or possession of another, any property with intent to appropriate the same to his own use, he shall be punished by confinement in the penitentiary for life, or for a term of not less than five years; and, when a firearm or other deadly weapon is used or exhibited *in the commission of the offense,* the punishment shall be death, or by confinement in the penitentiary for any term not less than five years."

In our opinion, robbery under this statute may be committed in either one, or any two or three, or all four of the following ways: First, "by assault;" second, "by violence;" third, "by putting in fear of life;" fourth, "by putting in fear of bodily injury." If the offense is committed in either or all of these ways, and not by the use or exhibition of a firearm or other deadly weapon, the penalty is confinement in the penitentiary for life, or any term not less than five years; but, under whichever or all of these ways the offense is committed, if committed "when a firearm or other deadly weapon is used, or exhibited," and the pleader so alleges, and proves, the punishment is by death or by confinement in the penitentiary for any term not less than five years. In charging robbery it is absolutely essential that some one or the other or all of the manners in which it may be committed, that is, by assault or by violence, or by putting in fear of life or by putting in fear of bodily injury, shall be alleged, and if it is sought to inflict the greater penalty for the offense, then, in addition to the above necessary allegations in the indictment, the pleader must further allege that, whichever way, or all the ways above charged have been used, the fact that "a firearm or other deadly weapon was used or exhibited in the commission of the offense."

An indictment merely alleging that robbery had been committed by the use or exhibition of a firearm or other deadly weapon, without also alleging that it was committed in one or the other or all of the ways of "by assault, or violence, or by putting in fear of life or bodily injury," would charge no offense at all.

Of course, in discussing the allegations of the indictment, we assume that it also contains, as the indictment in this case does, the other necessary allegations, that the defendant did "fraudulently take from the person or possession of another (naming him) certain prop-

erty (describing it) with intent to appropriate the same to his own use," and deprive the owner thereof.

The indictment in this case shows to have been drawn in exact accordance with the forms laid down by Judge White under this article in his Annotated Penal Code, in sections 1464 and 1465, showing clearly and unequivocally that the offense charged in this case was so charged as to call for the higher penalty of death, and not the lower penalty of life imprisonment in the penitentiary only. The indictment on this point is as follows: That the appellant on or about May 1, 1910, and anterior to the presentment of this indictment in the county of Robertson and State of Texas, "did then and there unlawfully and wilfully make an assault upon Nelse Shanklin, and then and there by the said assault and by violence to the said Nelse Shanklin, and by putting the said Nelse Shanklin in fear of life and bodily injury, and then and there by using and exhibiting a firearm, to wit, a pistol, did then and there fraudulently take from the possession of said Nelse Shanklin, without the consent and against the will of the said Nelse Shanklin," etc. Then follows a description of the property and the other necessary allegations to completely charge the offense. It is true that identically the same form of indictment was used in Murdock v. State, supra, but the Murdock case was incorrectly decided and is hereby expressly overruled. Neither that indictment, nor the indictment in this case, charges two separate and distinct offenses, but they charge only one offense, and the necessary allegations in that as in this, were made so as to authorize the infliction of the higher penalty. Two offenses were not charged—one only. Neither the case of Heineman v. State, 22 Texas Crim. App., 44, nor Hickman v. State, 22 Texas Crim. App., 441, is in point, because in each of those cases two separate and distinct offenses were clearly charged in one count only.

The motion is overruled.

*Overruled.*

DAVIDSON, PRESIDING JUDGE.—I can not agree to this affirmance. The Murdock case, 52 Texas Crim. Rep., 262, lays down the correct rule as to form of indictments under robbery statutes and should be followed. Judge White prescribes different forms for the two kinds of robbery.

I am of opinion further there was error in permitting prosecuting witness to be led by the district attorney, and that answers were erroneously admitted. Nolen v. State, 8 Texas Crim. App., 585; Davis v. State, 43 Texas, 185; Ripley v. State, 51 Texas Crim. Rep., 126; Goodsoe v. State, 52 Texas Crim. Rep., 626; Garrett v. State, 52 Texas Crim. Rep., 255; Rangel v. State, 22 Texas Crim. App., 642, and cases cited in above cases. I may write more fully later.