WILLIE BELL V. THE STATE.

No. 3561. Decided May 26, 1915.

Rehearing denied June 23, 1915.

**1.—Robbery—Indictment—Duplicity.**

Where the indictment charged that the defendant did make an assault on S., and by said assault and by violence and by putting S. in fear of life by the use of firearms, etc., did fraudulently take from S. certain property, there was no error in overruling a motion to quash on the ground that it charged more than one offense in one count of the indictment. Following Green v. State, 66 Texas Crim. Rep., 446.

**2.—Same—Charge of Court—Defensive Matter.**

Where, upon trial of robbery, the evidence showed that the officer rightfully levied on defendant's property and the latter took the same forcibly from his possession at the point of a shotgun, and the court, in his charge, fairly and fully presented the defensive matter made by defendant's testimony, towit, that he did not know the officer was acting under a writ, etc., there was no reversible error.

Appeal from the District Court of Rusk. Tried below before the Hon. W. C. Buford.

Appeal from a conviction of robbery; penalty, seven years imprisonment in the penitentiary.

The opinion states the case.

*Futch & Tipps,* for appellant.—On question of duplicity of indictment: Murdock v. State, 52 Texas Crim. Rep., 262, 106 S. W. Rep., 374; Golden v. State, 72 Texas Crim. Rep., 19, 160 S. W. Rep., 957; Green v. State, 66 Texas Crim. Rep., 446; Porter v. State, 86 S. W. Rep., 767; Johnson v. State, 74 Texas Crim. Rep., —, 171 S. W. Rep., 211; White v. State, 66 Texas Crim. Rep., 378, 146 S. W. Rep., 937.

On question of insufficiency of evidence: Boyd v. State, 18 Texas Crim. App., 339; Neely v. State, 8 id., 64; Seymore v. State, 12 id., 391; Ainsworth v. State, 11 id., 339; Barnes v. State, 9 id., 128.

*C. C. McDonald,* Assistant Attorney General, for the State.

HARPER, JUDGE.—Appellant was convicted of robbery and his punishment assessed at seven years confinement in the State penitentiary.

The indictment against appellant alleges that he did make an assault on Jim Smith, and by said assault and by violence and by putting Smith in fear of life by the use of firearms, etc., did fraudulently take from Smith certain property. Appellant contends that this indictment charges two offenses in one count, and cites us to Murdock v. State, 52 Texas Crim. Rep., 262, in which it is so held, and if the indictment did seek to charge two offenses in one count, of course appellant's motion to quash should have been sustained. The indictment is brought under article 1327 of the Penal Code, defining robbery. After stating that the offense may be committed by assault, by violence, and by putting in fear of life or bodily injury, the statute further provides that if in making the assault, etc., a firearm or deadly weapon is used, the punishment shall be more severe than if the robbery is committed by assault, etc., without the use of firearms. It would be impossible to charge robbery by the use of firearms without also alleging that in using the firearms an assault was made, violence used, or the person assaulted was put in fear of his life by the means used. The statute simply provides that if firearms are used in the commission of the offense a more grave punishment may be inflicted if the jury see proper to do so. · This question was thoroughly discussed in the case of Green v. State, 66 Texas Crim. Rep., 446, 147 S. W. Rep., 593, on motion for rehearing, and we do not deem it necessary to do so again. The indictment charges only one offense—robbery by the use of firearms.

The facts in the case would show that appellant was indebted to Arthur Sanders and Al Alston, and had given them mortgages on property described in the mortgages to secure their debts. Mr. Sanders' mortgage was taken after the mortgage had been given to Mr. Alston, and Sanders purchased the Alston mortgage. After doing so he brought

suit in the County Court to foreclose the mortgages and sued out a writ of sequestration, placing the writ in the hands of Constable Jim Smith. Mr. Smith went to appellant's home. Only appellant's wife was at home, he having gone hunting. Mr. Smith told appellant's wife what was his business, and proceeded to levy on two mules, wagon and other property, and undertook to carry it off. Appellant's wife went to the woods hunting for her husband. When she found him, she told appellant Mr. Smith had been there and took the property. When appellant was informed that Smith had taken the property and was on his way to Pine Hill with it, he secured a mule from a neighbor and overtook Smith about five or six miles on the road to Pine Hill. Up to this point there is no disagreement in the evidence; from this point on there is a divergence. Smith says when appellant overtook him appellant asked, "What in the hell does all this mean?" and that he then told him he had papers for the property, and that Mr. Sanders had sent him after it. That appellant got in front of him, threw his gun in his face, and said, "Turn this team, you G—d d—m son of a b—h, or I'll blow your brains out right there in that wagon." Some other words passed, and Smith says appellant compelled him to turn and drive the stuff he had levied on back near to his home. These are the acts relied on to show robbery.

Appellant admits his wife came to him and told him Smith had taken the property, but denies he knew that Smith was an officer, or that he had any writ. He admits he got a mule and overtook Smith, and had a gun, but denies that he pointed the gun at Smith, and denies that Smith then told him he had a writ, but he says when he overtook Smith he asked what he was doing with his property, and Smith told him Arthur Sanders had sent him to get the property. Appellant denies that he knew Alston had transferred his mortgage to Sanders, and there is nothing in the record to show that he did know it. Appellant says he told Smith that Sanders had no right to the property—that Alston had a mortgage on it, and under an agreement with Alston he was to keep the property for him, Alston, until they could see if they could make a trade for the next year, and he did not want the property taken away until he had conferred with Mr. Alston, saying he told Smith that after he saw Alston if Sanders had any right to take the property, they could come and get it Monday morning.

Appellant's defense is he, in repossessing himself of the property, did not know that Smith was an officer, and that he took it from Smith to hold for Alston, not knowing that Sanders had purchased the mortgage. On this issue the court instructed the jury:

"If you find from the testimony that the defendant took the property from Jim Smith, but at the time he did so he did not know that Jim Smith was an officer and had taken the property under a writ of sequestration issued by a court of competent jurisdiction, and that he took said property for the purpose and with the intent to have it or its value applied to the payment of the debt he owed Alston, then you will find the defendant not guilty. The law presumes the defendant to be inno-

cent until his guilt is established by legal evidence to the satisfaction of the minds of the jury beyond a reasonable doubt. The burden of this proof is upon the State, and in case you have a reasonable doubt of the defendant's guilt you will find him not guilty." Also, at the request of appellant, he gave the following special charge:

"You are charged as a part of the law in this case that among the essential elements necessary to constitute the offense of robbery is that there must be a fraudulent intent in the taking of the property at the time. A fraudulent taking is a taking of property with an intent to deprive a person of property that belongs to another. Now you are instructed that, if you believe from the evidence in this case that the property was taken by defendant, if it was, still if you believe that there was no fraudulent taking, and if the defendant took same under an honest claim of right, believing that it was his property, or that he had a right to hold same for Al Alston, then you will find the defendant not guilty."

This was a fair and full presentation of the defensive matter made by defendant's testimony. According to the State's case appellant repossessed himself of the property by force; took it away from an officer who had made a lawful levy thereon. Appellant does not deny taking the property from the officer, and does not deny holding it after he knew the officer had levied thereon, but says he did not learn of the levy until they got nearly back to his home, but when he learned of the levy, if he did not learn of it until then, he kept the property, telling the officer he would investigate the matter, and if Mr. Alston said Sanders had a right to it he could get it the next Monday. There are no bills of exception in the record to the introduction of testimony, although some complaint is made in the motion for a new trial. This would not be verified in a way we would be authorized to consider it. There was no exception reserved to the charge of the court at the time it was submitted to counsel, but exceptions are reserved to the failure of the court to give a number of special charges requested. Appellant requested the court to instruct the jury that the property was not the property of Smith, in whom the ownership was alleged, and to acquit appellant. Property levied on by an officer is in his exclusive possession, and, therefore, ownership may be alleged in him. Article 1335 specifically provides that one may be guilty of theft of property owned by him where he takes it from an officer of the law, where the property is in possession of the officer by virtue of process issued out of a court of competent jurisdiction. In this case there can be no question the County Court had authority to issue the writ of sequestration. And it is provided by articles 1333 and 1334 that ownership may be alleged in the person having actual control, care and management of the property at the time it is taken.

The other special charges in so far as they are the law of the case were fully covered by the court's main charge. The evidence in this case presents a rather strange case. An officer rightfully levied on the property. Without investigation the owner of the property, thinking

Alston had a superior claim to the property, took it from the officer, as he contends. If that be true, it seems a rather harsh rule of law that would hold him guilty of robbery, yet the law can not and does not sanction the taking of property from an officer at the point of a shotgun. Out of such proceedings a killing often grows, and the law does not sanction the use of force by anyone to repossess himself of his property, although he might think another had the superior right to it. Courts are provided to adjudicate these questions. If appellant did not know Smith was an officer, who had legally levied on the property, the felonious intent might be lacking. But the court requires the jury to find that appellant was aware of that fact, and Smith testifies that he so told appellant, and under such circumstances we do not feel authorized to disturb the verdict. If it is a fact that a part of the property was not covered by the mortgage, it is certain a portion of it—the mules and wagon—was covered by it, and the writ of sequestration, and appellant took property from the officer that was covered by the writ and mortgage. This he had no right to do, if he knew he was an officer, and had levied on it under a writ in his possession.

The judgment is affirmed.

*Affirmed.*

[Rehearing denied June 23, 1915.—Reporter.]