## AUSTIN TERM, 1897.

### L. T. ARNOLD V. THE STATE.

No. 828. Decided May 26, 1897.

38   1
38   7

**1. Jury Law—Quashal of Panel—Re-Summoning Said Jurors.**

Where the panel of the jury had been quashed, and the jurors had retired from the court room, and the sheriff, upon being ordered to summon another jury, summoned some of the same jurors who had been upon the panel that had been quashed; Held, no error.

**2. Same—Challenge to the Array.**

When a challenge to the array of the jury is based upon the action of the officer in summoning them, it can only be done by stating, under oath, that said officer has acted corruptly, and has wilfully summoned persons upon the jury known to be prejudiced against the defendant, and with the view of causing him to be convicted. Code Crim. Proc., arts. 661, 663. And such challenge can only be made where the jurors are those that have not been selected by the jury commissioners. Art. 662.

**3. Same—Local Option—Qualification of Jurors Who Sat on Trial of a Similar Case.**

On a trial for violation of local option, it would be no ground of disqualification that the same jurors had tried the defendant previously upon a similar charge, the transactions being different and in no way related to each other.

**4. Local Option—Social Club—Evidence.**

On a trial for a violation of local option, where the defense was, that defendant was engaged in a lawful business, as steward or barkeeper for a social club, it was competent for the State to prove that prior to the institution of the prosecution, between certain dates, 160 casks of beer had been shipped to said club for the benefit of the members; the same being relevant and pertinent to defendant's connection with the club and profits in the business.

**5. Same.**

See facts, stated with regard to a " Social Club," held to be an evasion of the local option law. Following Sutton v. State, 40 S. W. Rep., 501.

APPEAL from the County Court of Brown. Tried below before Hon. CHARLES ROGAN, County Judge.

Appeal from a conviction for violation of local option. Penalty, a fine of $25, and twenty days imprisonment in the county jail.

The defense was that defendant was steward of a social club, and that as such he was not liable under the law. All the facts pertaining to the organization, management, business, etc., of said so-called club, and its operations in connection with the purchase and sale of beer by and through defendant as its steward, are fully explained in the testimony of "the president" of the club, Mr. J. S. Lowry.

38 Texas Crim. App.—1

J. S. Lowry testified: "About the first of January, 1895, myself and four others contributed $2.45 each, and ordered a cask of beer. It cost $12.30, delivered. I saw Mr. Scott, a partner of defendant, and asked him if we could leave our beer in their house, and get them to keep it on ice for us. I stated to him that each of us would deposit, in a box that I prepared and gave him, $12\frac{1}{2}$ cents every time we took out a bottle of beer, to be used in buying another cask when that gave out, and to pay for keeping the beer cold and in prime condition. And said to him, if that was not enough to pay expenses, such as lights, rents, etc., that we would pay the balance. They have never called on us for any difference or contribution. I think the house in which Scott and the defendant do business belonged to L. Bair; don't know whether the club pays him rent or not. I never made any such arrangements with him. I gave Mr. Scott the names of the other four who were joint owners of the beer with me. They were Stewart Scott, Walter Scott, W. H. Hurst, and ————— Franke. I was sometimes called president of the club. I suppose it was because I took the first beer over there and made the arrangements with Mr. Scott and Mr. Arnold to keep it cold. Afterwards, we allowed others to join us. In order to become a member, an applicant had to get the consent of some of the members of the club and pay the fee for membership. We tried to fix on such an amount, to deposit when we drank beer, as would pay the cost of the beer and to keep it cold for us. Mr. Scott afterwards told me, that there was no profit left, and I was satisfied with what he told me. Scott & Arnold took charge of the beer for us, at my request. They did not suggest it, nor solicit it. The money put into the box was for the purpose of replenishing the stock of beer and to keep it cool, and to cover breakage and other things I have mentioned before. I don't think there would be any profit on the beer. I have never called on them for any profit or for any accounting. The revenue license expired July 1st, and has not been renewed. The club disbanded. Never asked them to return me the $2.45 I put in. I don't care anything about it. There has never been any settlement between the club and Scott & Arnold. I care nothing about any settlement. I understood that the difference between what it cost to lay the beer down in Brownwood and the $12\frac{1}{2}$ cents per bottle was to pay for keeping it cold and in prime condition. I told Mr. Scott, that if this and the empty bottles and casks was not enough to pay them for keeping it cold and in prime condition and their services in giving it out to the members as they called for it, the club would make it up. I did not understand, nor contemplate, that there would be any profits. Mr. Scott told me afterwards that there was not any. If there was any profit, I suppose it would belong to the club, if they should demand it. I do not know how many members there are now in the club. I can call The names of several of the members. Scott & Arnold have never made any financial report to the club, nor has any such report ever been demanded of them, that I know anything about. I have never contributed any money to the club, except the original $2.45, and the $12\frac{1}{2}$

cents in place of each bottle used. I have never received or asked for anything back, and don't expect to."

[No briefs for either party have come to the hands of the Reporter.]

*Mann Trice*, Assistant Attorney-General, for the State.

DAVIDSON, JUDGE.—Appellant was convicted of violating the local option law, and his punishment assessed at a fine of $25 and twenty days imprisonment in the county jail; hence this appeal.

He moved to "quash and set aside the panel of jurors summoned for the week of court during which this trial took place." This motion was sustained. This action of the court seems to have been based upon the fact that the jurors had been summoned by the sheriff without taking the oath required by the statute in summoning jurors other than those drawn by the jury commissioners. Some of said jurors had been drawn by the jury commissioners for the first week of the term (the trial occurring in the third week), and had been summoned (as stated above) by the sheriff without taking the oath required by the statute. Whether or not this action of the court in sustaining the motion to quash and set aside the panel of jurors was correct, is not presented for review. When this motion to set aside the panel was sustained, these jurors left the courthouse, and the sheriff was sworn as required by law, and summoned the required number of jurors to attend upon the court. Among the number so summoned by him were some of those who had been summoned by the sheriff as jurors on the panel quashed by the court. The array of jurors thus summoned was challenged by the defendant. The authority of the sheriff to summon the jurors in this character of case is expressly provided by statute. See Code Crim. Proc. 1895, art. 695, and Anderson v. State, 34 Texas Crim. Rep., 96. When the challenge to the array is made under the circumstances set out, it can only be done by stating under oath that the officer summoning the jury has acted corruptly, and has willfully summoned persons upon the jury known to be prejudiced against the defendant, and with the view of causing him to be convicted. See Code Crim. Proc. 1895, arts. 661, 663. And such challenge can only be made when the jurors are those who have not been selected by the jury commissioners. Id., art. 662. There was no error in this ruling of the court.

It is shown by the third bill of exceptions that appellant proposed to ask the jurors in this case if they had formed a conclusion as to defendant's guilt in another local option case, or if they had become prejudiced against him on account of said former case, or if they believed that he was an immoral man, or if they believed that he had been selling beer at Temperance Hall. The court refused to permit appellant to ask these questions. It may be stated in this connection that one or more of the jurors who were summoned had tried defendant in another case for violating the local option law. It is stated by the court, by way of

explanation to the bill, that the case then on trial charged the sale of intoxicating liquors to Joe Hall on June 6, 1895, when the case on which he had been previously tried was for selling to J. A. Strickland on March 28, 1895. The jurors stated that they had no bias in favor of, or prejudice against, the accused, and had not formed or expressed an opinion, from hearsay or otherwise, that would in any way influence their action in finding a verdict in the case on trial. The action of the court was correct, as this constituted no ground of cause for challenge. The fact that the defendant may have been guilty of violating the local option law on the 28th of March, 1895, if tried by the same jury, would be no cause for challenge in a case where he is charged with violating the same law on the 6th of June, 1895. These are different transactions, and in no way related to each other. We are of opinion that there was no error committed by the court in regard to the impaneling of the jury.

By another bill of exceptions it is shown that, over the objection of the defendant, the State was permitted to prove that between the 1st of February and the 1st of July, 1895, there had been shipped to the Brownwood Club 160 casks of beer. This was objected to on the ground that it was calculated to injure the rights of the defendant, and prejudice him before the jury. The defense was that the defendant and his partner were the stewards or barkeepers of the Brownwood Club, and that the beer shipped to said club, or to Brownwood for the benefit of said club, was for the benefit of the members, and not in violation of the local option law there in force. The testimony shows a list of the members of said club, amounting to about 45 or 50, and the manner of carrying on and operating this club. To meet these phases of the case, the State proved by the witnesses that the defendant and his partner shipped this beer in to Brownwood, and sold it to the membership of the club (the purchaser in this case, however, not being a member) at the old retail price, as licensed saloons, beer gardens, etc., and that these casks contained about 120 bottles to the cask. When the defendant introduced evidence with reference to the club that he was operating, or the barroom or saloon, as the case might be, his contention before the jury being that the business was a lawful one, and not in violation of the law, all the circumstances and facts attendant upon the action of the defendant in connection with that club and the profits of sales became relevant and pertinent to the issue thus raised. Under the facts of this case, the testimony was admissible, and the court did not err in permitting the county attorney to prove the facts stated in the bill.

A bill of exceptions was reserved to the charge of the court in regard to the club, and the good faith of the defendant and parties interested in the formation and carrying on of the business of the club. There were some charges asked by defendant amplifying some matters, and submitting some other phases of what he conceived to be the law applicable to these facts. We deem it unnecessary here to discuss these questions. We held in Sutton v. State (decided at Austin term, 1897), 40 S. W. Rep., 501, that it was not authorized to carry on this business

and sell the liquor as detailed, and the error in the charge of the court consisted in the fact that it was submitted as a defensive matter at all. On the authority of Sutton v. State, supra, the action of the court was correct. The judgment is affirmed.

*Affirmed.*

[NOTE.—Appellant's motion for rehearing was overruled without a written opinion.—Reporter.]