## Ramos Cantu v. The State.

No. 11846.   Delivered October 31, 1928.

The opinion states the case.

No brief filed for appellant.

*A. A. Dawson* of Canton, State's Attorney, for the State.

HAWKINS, Judge.—Appellant was convicted for the murder of Jose Mosquedo, punishment being fifteen years in the penitentiary.

The killing occurred at night near a house where a dance was in progress.   One Reynaldo Rodriguez appeared upon the scene very much under the influence of intoxicating liquor.   He engaged in a conversation with deceased.   Reynaldo had his hands in his pockets. Deceased seemed to have regarded this as significant and upon Reynaldo refusing to remove his hands from his pockets deceased. pushed him back and Reynaldo fell to the ground.   After getting up he again put his hands in his pockets whereupon deceased again pushed him down.   The acts of deceased did not appear to be violent but Reynaldo seems to have fallen because of his drunken condition.   A brother of deceased took Reynaldo away and deceased started towards the house.   It was discovered that Reynaldo had a knife in his hand which was taken from him by deceased's brother. The evidence is positive to the effect that Reynaldo did not strike deceased.   As Reynaldo was being taken away appellant came on the scene and made inquiry as to what was the matter and Reynaldo told him deceased had struck him (Reynaldo) two violent blows,

whereupon appellant said, "I will settle that," called to deceased, and cursed him. Deceased turned and came back meeting appellant. One witness said "They went together." They were separated and it was almost immediately discovered that deceased had been stabbed in the region of the heart. He lived but a short time. No one saw appellant with a knife or saw him strike deceased. Almost directly after deceased was found to have been stabbed appellant accused Reynaldo of having done it, advised him to leave the country and offered to furnish him money for that purpose. When Reynaldo denied having done the stabbing appellant struck him two violent blows. Appellant was arrested the next day and a knife found upon him which seemed to have had a very sharp edge which had been turned by rubbing it against something. No blood was discovered on this knife. The knife taken from Reynaldo had blood on it. This fact was explained by deceased's brother who said when he took the knife from Reynaldo he had placed it in his (witness') pocket open; that upon discovering a few minutes later that his brother had been stabbed witness got blood on his hands working with his brother, and got the blood on Reynaldo's knife when witness took it out of his pocket to close it.

Four bills of exception are found in the record. Bill No. 1 relates to a claimed error in the formation of the jury growing out of a mistake in the return on the venire facias. This question will not arise on another trial. Bills 2 and 4 are not thought to present matters serious enough to demand discussion.

Bill No. 3 reflects the following occurrence. During the argument of the district attorney he said "This man (referring to appellant) commanded the respect of the other Mexicans in the community as a fighting man." Upon objection being made the court instructed the jury to disregard the argument, whereupon the district attorney said "That was a deduction from the evidence in the case from his (appellant's) own conduct," and continued his argument as follows, "You don't know how many other men this man has killed or how many men's blood he has bathed his hands in. Are you going to turn aloose this man and give him another opportunity to plunge his knife into some unsuspecting man's vitals?" The court instructed the jury not to consider said argument whereupon the district attorney continued, "It is true there is no evidence on that subject. I asked the question, you gentlemen heard me ask the question, and he turned pale and said nothing, and the question was objected to and the court sustained the objection." We find no

option but to hold the argument to have been of such prejudicial nature that an instruction to disregard it was unavailing. The court was apparently doing all in his power to prevent an injustice being done appellant, but over the continued ruling of the court the district attorney persisted in an argument which in the fact of his own admission was not supported by the evidence. No testimony is found in the record that appellant had ever been legally charged with any grade of homicide. The court had sustained objection to whatever question had been asked by the district attorney upon the subject and we must presume the court's action was correct; yet the argument appears to be an unmistakable intimation to the jury that the district attorney would have developed some evidence on the subject he was improperly discussing except for the objection interposed to his question and the court's ruling thereon. Extended discussion is not called for. Whether an argument in a particular case demands reversal must depend upon the entire record in that case, hence precedents are not largely helpful. As illustrative we refer to Cole v. State, 92 Tex. Cr. R. 368, 243 S. W. 100; Vineyard v. State, 96 Tex. Cr. R. 401, 257 S. W. 548; Sharp v. State, 102 Tex. Cr. 305, 277 S. W. 1085; Stapleton v. State, 107 Tex. Cr. R. 596, 298 S. W. 578. Many other authorities are collated under Note 11, Art. 648 Vernon's C. C. P., Vol. 2, page 92. It has many times been held improper to get before the jury in argument a fact which the state would not be entitled to prove the effect of which is damaging to accused. Many cases in addition to those already cited may be found in Sec. 364, Branch's Ann. Tex. P. C., page 205.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*