B. A. KING v. THE STATE.

No. 11562. Delivered December 19, 1929.
Rehearing granted June 19, 1929.

The opinion states the case.

*Deal & Brim* of Sulphur Springs, and *Crosby & Estes* of Greenville, for appellant.

*Emmett Thornton,* County Attorney, *Ramey & Davidson,* and *A. A. Dawson* of Canton, State's Attorney, for the State.

CHRISTIAN, JUDGE.—The offense is making a false entry in a book of a state bank; the punishment confinement in the penitentiary for five years.

It was averred in the indictment that appellant as cashier of First State Bank of Sulphur Springs, Texas, did "knowingly and unlawfully make in a book then and there belonging to and used by the said state bank in the conducting of its banking business then and there known and designated as the general ledger upon a sheet in said general ledger showing the account of warrants owned and held as assets of the said state bank and upon line 15 and to the right of the word 'balance' under the heading and date December 21, 1926, a certain false entry in words and figures as follows: $98,-064.90; the said false entry then and there tending and meaning to convey the impression and in substance and fact indicating that the said First State Bank owned and held on December 21, 1926, at the close of business on said day, warrants to the amount and value of $98,064.90; whereas, in truth and in fact the said First State Bank did not own and hold as assets warrants to the amount of $98,064.-90." In his motion to quash the indictment appellant contends that the averment herein quoted is vague, indefinite and uncertain; that it fails to charge appellant with the violation of any law; that it is but an assumption and conclusion on the part of the pleader without any facts being set forth to show that the entry was false; that the amount which should have been entered is not shown.

Article 545 P. C. requires the following averments:

1. That the accused was president, cashier, director, teller, clerk, or agent of a state bank or banking and trust company incorporated under the laws of Texas, which was carrying on a banking business in a designated place.

2. That, being such president, cashier, director, teller, clerk or agent, the accused made in a book, report or statement of such bank or bank and trust company, describing it, a false entry, describing it.

3. That such false entry was made with intent to defraud the bank or banking and trust company, or any other corporation, body politic, or any person, firm or association (naming them), or to deceive any officer of the bank or banking and trust company, the

Banking Commissioner or any examiner or special agent authorized by law to examine the affairs of such bank or bank and trust company.

4. Averments of time and place.

An examination of the indictment discloses that it contains the necessary averments and that they are pleaded with clearness and reasonable certainty. It was competent to explain the false entry by innuendo and such averment is not subject to the exception that it represents the conclusion of the pleader. It is our conclusion that none of the objections are well taken. The indictment embodies the language of the statute. It charges every element of the offense created by the statute with sufficient certainty and gives appellant notice of the charge he is called upon to meet. United States v. Britton, 107 U. S. 655.

Appellant further moved to quash the indictment because the officer intended to be deceived was averred to be the commissioner of insurance and banking, whereas, no officer of the character described is known to our law. It is averred that the false entry was made with intent "to deceive the Commissioner of Insurance and Banking and the Examiners and Special Agents authorized by law to examine the affairs of the said First State Bank." Under the terms of Article 545 P. C. the accused may be charged with the intent to deceive "any officers of such bank or banking and trust company, the Banking Commissioner or any examiner or special agent authorized by law to examine the affairs of any such bank or banking and trust company." The naming of the banking commissioner as the person appellant intended to deceive was not legally essential to the validity of the indictment. The pleader was authorized to name the banking commissioner or any examiner or special agent or any officer of the bank. He undertook to name the banking commissioner, examiners and special agents. The naming of one of the persons described would have met the requirements of the statute. Hence we may reject as surplusage the words "Commissioner of Insurance and Banking." In his Annotated Penal Code, Section 497, Mr. Branch states the rule as follows:

"If not descriptive of that which is legally essential to the validity of the indictment, information, or complaint, unnecessary words or allegations may be rejected as surplusage."

See also Schapiro v. State, 169 S. W. 683.

It was alleged in the indictment that appellant was "the duly elected, qualified and acting cashier of a certain state bank, to-wit:

First State Bank, which said First State Bank had theretofore been duly and legally incorporated, created and organized under and by virtue of the laws of the State of Texas, and which state bank was then and there carrying on a banking business in the town of Sulphur Springs, Hopkins County, Texas, under the banking laws of the State of Texas * * *." The proof showed the corporate name of the bank to be First State Bank, Sulphur Springs, Texas. Appellant asserts that there is a variance between the name of the bank charged in the indictment and the name as established by the proof. Appellant was advised by the averments in the indictment that the bank transacted its business in Sulphur Springs, Texas. While part of the name, the term "Sulphur Springs, Texas" would be commonly understood as referring to the place where the corporation was transacting its business. Appellant could have been in no manner misled as to the bank intended by the pleader. It is our conclusion that the variance is not fatal. In disposing of a similar question, the Supreme Court of the United States held in the case of Putnam v. United States, 162 U. S. 686, that the omission of the words "of Exeter" from the name of a national bank did not constitute a fatal variance.

Appellant was cashier of First State Bank of Sulphur Springs. The bank was depository for the county and school funds. When the funds of the county and school districts became exhausted the teller would cash the warrants of the county and school districts out of the regular funds of the bank and carry such warrants as assets. The teller would make a total of the warrants cashed, enter such total on a slip of paper and pass the slip of paper, together with the warrants, to appellant. Appellant kept the general ledger in which was carried the warrant account. Upon receiving the total of warrants carried as assets, appellant would enter on line 15 in the general ledger the total amount of warrants carried by the bank as assets. It was customary to make the entries from the slip furnished by the teller. These entries were made with pen and ink. Individual ledgers were kept by the bookkeepers in which appeared the accounts of the county and school districts. Appellant had nothing to do with the posting of the accounts carried in the individual ledgers, except that he furnished the bookkeepers debit slips showing the total amount of warrants to be charged against the county and school accounts. The warrants upon which the totals shown on the debit slips were based were not handed to the bookkeepers. Appellant had charge of the warrants. When carried as assets the warrants were

placed in a file in the vault. When funds were received from the county and school districts the individual ledger accounts of such county and school districts would be credited with the amounts received. Warrants in an amount sufficient to take up said credits would then be withdrawn from the warrant account on the general ledger and charged against the proper account in the individual ledger, the charge being made from debit slips furnished by appellant as above indicated. The warrants would then be withdrawn from the file aforesaid, cancelled and placed in another file. Appellant performed the duty of withdrawing and cancelling the warrants. The amount shown on the general ledger as assets would be reduced in the amount charged against the county and school accounts on the individual ledger. A book furnished by the Superintendent of Public Instruction showed, when posted, each school voucher paid off and the date of payment. It was appellant's duty to post this book. When an investigation of the affairs of the bank was made it was discovered that appellant had failed to keep said book posted to date. In due course of business the bank would transfer some of the warrants held as assets to other banks. When funds were received sufficient to take up said warrants appellant's bank would recall the warrants and pay over to said banks an amount of money sufficient to retire said warrants. Appellant was in Mineral Wells in April, 1927, recuperating from an attack of illness. During appellant's absence the vice president of the bank and other employees performed appellant's duties, including the posting of the general ledger. It was discovered that the funds on hand and anticipated funds were not sufficient to pay off the warrants held by the bank and in the hands of other banks. Officials of the bank made an effort to get appellant to return to Sulphur Springs and aid them in determining the status of the warrant account. Failing to secure his presence in Sulphur Springs, they visited him in Mineral Wells. Appellant maintained to them that the account was correct. An audit of the affairs of the bank covering a period ending August 31, 1926 was made. The auditors determined that the warrant account carried on the general ledger was short in the sum of approximately $79,000.00. The warrants found in the vault indicated that the bank had failed to cancel warrants charged to the county and school districts on the individual ledger since the year 1921. There was direct testimony that the entry in question, that is, the item of $98,064.90 was in the handwriting of the appellant, and upon the general ledger kept by him. After the bank was closed, a conversa-

tion took place between the appellant and one of the auditors in which he stated that he had not checked the account recently, that he had been out of the bank, but that he understood that the audit showed a shortage of $114,000.00; that the account was "out of line," but not in the full amount claimed by the auditors. There was evidence that the appellant had been speculating in cotton futures. Appellant did not testify in his own behalf.

Appellant timely excepted to the failure of the court to submit an instruction covering the law of circumstantial evidence.

Several cases of knowingly passing a forged instrument and some cases of forgery have been reversed for the want of a charge on circumstantial evidence. In the case of Nichols v. State, 39 Tex. Crim. Rep. 80, 44 S. W. Rep. 1091, the following language is used:

"The essential element constituting the offense charged, was not the mere passing of an instrument, but the passing of a forged instrument with knowledge on the part of the utterer at the time that it was a forgery. This, as stated above, was the gist of the offense. The passing of the same, though proved by direct testimony, did not relieve the case of being one involving circumstantial evidence, where all the other proof was established by that character of testimony, and in our opinion, the court should have given the requested charge." (Gaut v. State, 49 Tex. Crim. Rep. 495.)

So far as the writer is aware, no case of forgery has been reversed for the want of a charge on circumstantial evidence where there was direct evidence that the alleged forged instrument was written by the accused. Among the cases of forgery examined in which a charge on circumstantial evidence was required are Anselmo v. State, 200 S. W. 523; Dysart v. State, 46 Tex. Crim. Rep. 62; Cox v. State, 92 Tex. Crim. Rep. 497.

The case of Nichols v. State, supra, was reviewed by this court in the opinion of Judge Henderson in Gaut v. State, 49 Tex. Crim. Rep. 493. Gaut was charged with uttering a forged instrument and relying upon the decision in the Nichols case, insisted upon a reversal of his conviction because of the refusal of the charge on the law of circumstantial evidence. In affirming the case the court said:

"While we fully recognize the doctrine laid down in Nichols v. State, supra, yet we believe the facts in this case place appellant in such juxtaposition to the main fact, i. e., the circumstances showing his knowledge that said instrument was forged, indicating that he forged it, brings him in such proximity or juxtaposition in regard to the question of knowledge as to take his case out of the realm

of circumstantial evidence. We therefore hold that the court was not required to give the requested instruction."

Gaut's case, supra, has been many times cited with approval. See Chenault v. State, 201 S. W. 657; Fry v. State, 215 S. W. 562; Johnson v. State, 82 Tex. Crim. Rep. 585. In the Johnson case, supra, it was said:

"There is no statement by the appellant or any one else so far as the record shows, that the appellant wrote the check or signed it, nor is there any evidence that it was in his handwriting. That appellant made the forged instrument was the main fact to be proved. The evidence that he made it is wholly circumstantial. Passing a forged check with the knowledge of its forgery is a circumstance against an accused charged with forgery, and in some instances facts surrounding a fraudulent passing brings the accused in such juxtaposition to the forgery as to take the case out of the rule requiring a charge on circumstantial evidence. Gaut v. State, 49 Tex. Crim. R. 493; Jackson v. State, 193 S. W. Rep. 301. The check in this instance was not payable to the appellant. The proof that he knew it was forged was not direct, and his passing it is to be inferred only from circumstances detailed in the evidence."

In the present case there is direct evidence that the appellant made the false entry in question, that is, he made the entry in the general ledger showing that the unpaid school warrants belonging to the bank aggregated the sum of $98,064.90 on a given date. It was shown by direct evidence that he was the custodian of the school funds and charged with the duty of canceling the warrants that were paid. There is direct evidence that he furnished the data to the keepers of the individual ledgers in which the school accounts were kept, which purported to show the debits and credits against and for the respective school districts. There is also direct evidence that he stated that he knew that the warrant account was "out of line," claiming, however, that the amount was less than $114,000.00. The circumstances detailed by the auditors resulting from their examination of the books and affairs of the bank, including the warrants on hand, revealed that at the time of the entry showing that the unpaid warrants possessed amounted to more than $98,000.00, they, in fact, amounted to about $79,000 less than $98,000.00. It occurs to the writer that in testing the soundness of the appellant's contention, that there should have been an instruction to the jury upon the law of circumstantial evidence, the principle announced in

Gaut's case, supra, should control, and that in refusing to give the instruction no reversible error was committed.

Considering the direct evidence to which reference has been made, together with the close and intimate relation of the appellant to the transaction in question, the refusal of the charge on circumstantial evidence, if a fault at all, was not such a one as would warrant this court in reversing the judgment, but that the court would be controlled by Art. 666, C. C. P., 1925, denying the accused the right to a reversal for an error which was not calculated to injure his rights or to deprive him of a fair and impartial trial.

Appellant's bills of exception Numbers 2 and 3 reflect the fact that Cause Number 6318 involving the making of a false entry in the books of the bank had been called for trial and a jury empaneled; that after the indictment had been read to the jury and appellant had plead not guilty thereto the court stated to the remainder of the jury panel that they would be excused from further attendance upon the court for that week; that before any evidence was heard Cause Number 6318 was dismissed; that when the court convened after the noon hour the sheriff was verbally instructed to resummon the jurors that had been excused and that the court himself notified some of the jurors to return to court at 1:30 p. m.; that several of the jurors had received their pay for services to date; that at 1:30 p. m. the regular jurors for the week were present in court and that a jury to try the present case was selected from said regular panel. Appellant filed a written objection to going to trial on the ground that the regular jury had been discharged and was not therefore a legal jury; and further on the ground that said regular jury were aware of the fact that he had been indicted in Cause Number 6318 which fact they were not entitled to know unless appellant took the witness stand in his own behalf. The motion was overruled and appellant was tried before a jury composed of jurors who had theretofore been dismissed and recalled as aforesaid. The court qualified appellant's bills of exception with the statement that the jury in Cause Number 6318 had heard none of the evidence and that the present case was tried before a jury selected from the regular panel; that although said regular panel had been excused for the week, the court and sheriff shortly thereafter notified them that their services would be needed at 1:30 p. m. Twelve jurors belonging to the regular panel had not been excused by the court. Article 629, C. C. P. provides that when there are not as many as twelve names drawn from the box in the district court the court shall direct the

sheriff to summon such number of qualified persons as the court deems necessary to complete the panel. Thus twelve jurors being sufficient to constitute the panel there was a regular jury panel for the week in attendance upon the court. Article 631 C. C. P. provides for summoning talesmen when challenges reduce the number of jurors to less than would constitute a legal jury. Appellant objected to going to trial on the ground, among other grounds, that he was being required to submit his case to an illegal jury by virtue of the fact that the jurors theretofore discharged by the court could not be recalled for service on the jury for the week. If appellant had requested the court to stand aside the jurors who had theretofore been excused and his request had been refused, the action of the trial court in the premises might have been subject to review. Appellant did not do this. He contented himself with filing his written objection to going to trial on the ground that the entire panel was illegal. As indicated a panel of twelve jurors legally drawn was present in court and under the circumstances the court could very properly have refused appellant's request that said panel of twelve be stood aside. In that event talesmen could have been ordered if the number had been reduced by challenges. In the condition in which we find appellant's bill it is manifestly impossible for us to conclude that the learned trial judge fell into error in overruling appellant's objection to going to trial. The fact that the panel of twelve jurors who had not been excused by the court had heard an indictment read and appellant's plea of not guilty thereto would not within itself be sufficient ground for standing aside said jurors. These jurors had heard no evidence. They merely knew as far as the record discloses that appellant had been indicted on a different transaction. It has been held by this court that jurors who convicted the accused upon another case based on a different transaction and with different witnesses are not necessarily disqualified to serve in the trial of a subsequent case. If such jurors were able to declare to the satisfaction of the trial court that they were without opinion or prejudice in the present case they were not disqualified by their previous service on another case on the trial of which no evidence had been adduced. Asher v. State, 277 S. W. 1099; Arnold v. State, 40 S. W. 734.

We have carefully examined appellant's objections and exceptions to the court's charge and are of the opinion that appellant's contention that the question as to whether the entry involved was false was assumed by the court and not submitted to the jury cannot be sus-

tained. Our reading of the charge convinces us that the jury were advised that they must find beyond a reasonable doubt that the entry was false before they could convict appellant.

We find no affirmative defense raised by the evidence, and appellant's request that the court charge the jury that if they had a reasonable doubt that appellant had knowledge that the entry in question was false they would acquit him was properly refused.

Many bills of exception have not been discussed. We have carefully examined each of appellant's said bills and are of the opinion that reversible error is not manifested.

The judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—For a number of reasons appellant urges that we erred in our disposition of this case. In our original opinion we acceded to the proposition that the case was one of circumstantial evidence, but expressed the view that the facts seemed so closely related as to make the error of a failure to charge on cirmumstantial evidence not of reversible gravity. We have again carefully considered the record and find ourselves in such doubt as to the correctness of this announcement as to lead us to believe we should not let this conviction stand. The charge against appellant was the specific entry in a general ledger on December 21, 1926, of an item of $98,064.90, which was alleged to be a false entry, made in the books of a bank. The entry referred to was under the head of "Balance" in a warrant account which was carried on the books from day to day, and, for that matter, apparently from year to year, said account fluctuating in amount as increased or decreased by the daily business of the bank. Appellant as cashier kept that account. Whether at the close of any day the balance was larger or less than that of the day preceding, seems to have been determined, as we understand it, from the contents of a slip made out by the teller of the bank, who may have in the course of business on that day cashed a greater or smaller number of warrants, vouchers, etc., and who at the close of business made out such slip representing the total or aggregate amount of warrants, vouchers, etc., cashed by him

that day,—and passed such slip to appellant who therefrom made an entry in the warrant account under the head of "Balance" greater or less than the entry of the preceding day, as the slip handed him by the teller indicated. This custom was testified to by the teller and some other officers of the bank. Just what the balance entry in the warrant account was at the close of business on December 20, 1926, is not shown in the record, but we find stated, somewhat incidentally, that on December 22, 1926, the day after the date of the alleged false entry, the balance in said account was about $85,000.00, or some $12,000.00 less than on the day of the transaction herein charged. In other words, the entry of December 21, 1926, would appear to have been based on the slip made out by the teller and passed to appellant, and if,—for instance,—same showed $10,000.00 of warrants cashed by the teller during that day, we infer that the balance entry by appellant would be $10,000.00 less than a similar entry on December 21st. There was abundant evidence that the entry of December 21st was in appellant's handwriting, but in order that such entry be criminal, as a false entry, and punishable therefor under our statute, it must have been demonstrated beyond a reasonable doubt that appellant knew such entry was false when he made it. County warrants of all kinds, school vouchers and other warrants, entries of loans to school districts, etc. etc., all seem to have been referred to and listed in the warrant account, which continued to be kept until the bank closed its doors sometime in 1927, and if we understand the testimony of the vice president of the bank, he said that in April 1927 he and others examined the warrant account of the bank, compared the entries with the warrants held, and that they balanced. Be that as it may, and without expressing any opinion as to whether the account may or may not have been falsified at the time the particular entry was made, this fact and also the further fact of appellant's knowledge of its falsity seem clearly dependent for establishment on circumstances, and we are of opinion that the jury should have been so told in the charge. We do not think the indictment bad for failure to allege that the act of appellant was "authorized by the board of directors." That clause of the statute has reference to other acts of an officer of a bank, and not to the making of false entries. The testimony of Kean that the entry under the head of "Balance" in the warrant account on December 21, 1926, was a false entry, was shown upon his examination to have been but his conclusion based on certain inferences from other facts. He should be allowed to state the facts but not his opinion.

Believing that we erred in holding the error of the refusal of a charge on circumstantial evidence not of sufficient gravity to call for a reversal in the original opinion, and being of opinion now that such charge should have been given, the motion for rehearing by appellant will be granted, the affirmance set aside, and the judgment of the trial court reversed and the cause remanded.

*Reversed and remanded.*