ELLIS TAYLOR v. THE STATE.

No. 14806.   Delivered October 19, 1932.
Reported in 53 S. W. (2d) 610.

The opinion states the case.

*Collins & Martin* and *Bob Calvert,* all of Hillsboro, for appellant.

*Nat Gentry, Jr.,* of Tyler, *Sam H. Allred, Jr.,* District Attorney, of Hillsboro, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is making a false entry in a book of a state bank; the punishment, confinement in the penitentiary for two years.

Appellant was cashier of the Farmers State Bank of Blum. The testimony was undisputed that an entry had been made in the register of drafts on October 4, 1930, showing that appellant's bank had drawn a draft on the Continental National Bank of Fort Worth, payable to the Federal Reserve Bank, in the sum of $5.28. Further, it was undisputed that on the date mentioned the true amount of the draft was $7,275.28. This was shown by the introduction of the draft, which appears to have been in appellant's handwriting and signed by him, as cashier of the Farmers State Bank of Blum. The proof showed that the draft in the sum of $7,275.28 was in payment of a cashier's check. A bank examiner testified that if the draft had been actually drawn for $7,275.28, under the circumstances stated, and entered on the register as being in the amount of $5.28, the cash in the bank on the date in question would have been short $7,270. Due to the fact that some of the records had been burned, witnesses were unable to say that there was a shortage in the cash. Several witnesses testified that in their opinion the entry of $5.28 on the register of drafts was in aplant's handwriting.

Appellant did not take the stand in his own behalf. Miss Beatrice Wheat, who was an employee of the bank, testified

that she made the entry in question, and that appellant knew nothing about it. The witness explained that she had started to make an entry of $7,275.28 when she was called to some other part of the bank. She said that it was her habit to start on the right with the figures and that she had written the figures "5.28" when interrupted. She testified that she later placed the difference between $5.28 and the amount of the draft in the proper column on the draft register.

Appellant's motion to quash the indictment embraced several grounds, it being averred that allegations therein were vague and indefinite, and, further, that the indictment was duplicitous. An examination of the indictment discloses that it charges every element of the offense created by the statute with sufficient certainty, and that it is not duplicitous. It is in substantially the same form as the indictment set forth in King v. State, 113 Texas Crim. Rep., 130, 19 S. W. (2d) 52. See, also, Boyd v. State, 119 Texas Crim. Rep., 109, 45 S. W. (2d) 215.

Grouping two bills of exception relating to the argument of counsel for the state, it is observed that bill of exception No. 14 presents the following occurrence: There was a great congregation of people assembled in the courtroom in plain view of the jury. The assistant county attorney, in addressing the jury, used language as follows: "Before you find a verdict of not guilty in this case, think carefully and prayerfully of the obligation resting upon you toward the people and toward those good people of Blum who entrusted their funds in that bank. Do you think they are here in Ellis Taylor's behalf?"

At the time the assistant county attorney said, "Do you think they are here in Ellis Taylor's behalf," he waved his hand toward the congregation of people sitting in the courtroom. Appellant timely and properly objected to the argument, and the court instructed the jury not to consider the statement of counsel, but to be guided by the evidence. Bill of exception No. 16 reflects the following: The county attorney made the closing argument for the state. At the time he addressed the jury there was a large congregation of people in the courtroom. There had been no evidence adduced upon the trial showing that the Farmers State Bank of Blum had failed, nor was there any evidence showing that the community on the northwest side of the county had been wrecked or in any manner injured by appellant or by reason of the making of the alleged false entry. After the assistant county attorney, as shown in bill of exception No. 14, had called the attention of

the jury to the presence of the people in the courtroom, and after he had asked the jury if they thought that such people were there in appellant's behalf, the county attorney, in the course of his closing argument, used language as follows: "I recall in the beginning of the argument by Judge Collins that he used a great portion of his time not discussing the merits of his case, but in discussing Nat Gentry who was here to assist the state in the prosecution of a man who had been vitally interested in a bank which failed and wrecked the whole community in the northwest side of our county."

Appellant timely and properly objected to the remarks of counsel and the court instructed the jury to disregard that part of the argument which referred to the wrecking of the west side of the county.

The opinion is expressed that, considering the bills of exception together, the remarks of counsel for the state were, under the facts reflected by the record, obviously prejudicial. The issue of guilt was closely contested. The state relied upon circumstantial evidence to show that appellant made the entry. Miss Wheat testified that she made the entry and appellant did not know anything about it. There was no evidence supporting the statement that the community had been made to suffer by reason of the making of the false entry. The remarks injected a new issue not supported by the facts in evidence. If influenced by the remarks of counsel for the state, the jury could not likely have fairly analyzed the testimony touching the defensive issue. Reference to the large congregation in the courtroom, in connection with the insinuation that the people composing it desired conviction, gave color to the statement that appellant had wrecked the community in which his bank was situated. It has been many times held improper to get before the jury, in argument, a fact which the state would not be entitled to prove, the effect of which is damaging to the accused. Cantu v. State, 110 Texas Crim. Rep., 401, 10 S. W. (2d) 542, and authorities cited. Again, it is the announcement of the decisions when the improper argument is of such nature as to be obviously hurtful and prejudicial, a reversal will follow, although the trial court instructed the jury to disregard such argument. Goolsby v. State, 112 Texas Crim. Rep., 216, 15 S. W. (2d) 1052; Branch's Annotated Penal Code, sec. 362.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.