## Harrison Scott v. The State.

### No. 4051. Decided May 3, 1916.

**1.—Assault to Murder—Sufficiency of the Evidence.**

Where, upon trial of assault with intent to murder, the evidence sustained a conviction under a proper charge of the court, there was no reversible error.

**2.—Same—Attachment—Practice in District Court.**

Where the application for an attachment of absent witnesses was merely oral, and the bill of exceptions failed to show any legal grounds why the attachment should issue, there was no error in the court's refusal to order such attachment.

**3.—Same—Continuance—Second Application—Want of Diligence.**

Where the alleged absent testimony, in the light of the record, was probably not true, and no affidavit was attached to the motion for new trial, and besides there was a want of diligence to procure the absent witnesses, there was no error in overruling the motion for continuance. Following Giles v. State, 66 Texas Crim. Rep., 638, and other cases.

**4.—Same—Evidence—Credibility of Witness.**

The court committed no error in his refusal to permit defendant, who was tried for assault to murder, to show that the prosecutrix was a woman of loose character, etc., to attack her credibility as a witness. Neither did the court err in refusing to permit him to prove by the sheriff that if he had an attachment he could have secured the absent witnesses, as this was not a question for the jury.

**5.—Same—Suspended Sentence—Charge of Court.**

Where the penalty assessed against the defendant was ten years imprisonment in the penitentiary, the jury could not have recommended a suspension of sentence; besides the charge of the court was not objectionable.

**6.—Same—Argument of Counsel.**

Where the argument of the district attorney was based upon the evidence in the case, there was no error.

**7.—Same—Punishment—Rule Stated.**

It has always been held by this court that the amount of the punishment fixed by the jury, if within the time prescribed by law, is binding on this court.

Appeal from the District Court of Brazoria. Tried below before the Hon. Samuel J. Styles.

Appeal from a conviction of assault with intent to murder; penalty, ten years in the penitentiary.

The opinion states the case.

*A. E. Masterson,* for appellant.

*C. C. McDonald,* Assistant Attorney General, for the State.—On question of continuance and want of diligence: Parkerson v. State, 9 Texas Crim. App., 72; Gonzales v. State, 30 id., 203; McGee v. State, 31 Texas Crim. Rep., 71.

On question as to when attachment is authorized: Colbert v. State, 1 Texas Crim. App., 314; Tooney v. State, 5 id., 163.

PRENDERGAST, Presiding Judge.—Appellant was convicted of an assault with intent to kill Virginia Thomas, a negro woman, and his punishment assessed at ten years in the penitentiary.

Appellant's defense was self-defense, which was properly submitted in the court's charge, to which there is no objection. The jury found against him on evidence amply sufficient to justify their verdict.

Virginia Thomas, the assaulted party, had been married and had one child by her husband. Several years before this offense her husband had left her, and she had been separated from him. She testified that she had been receiving the attention and company of appellant for some two years, until very shortly before this offense. He testified in effect that he had been staying with her and "kept" her for this length of time, but that shortly prior to the offense she had cast him off and refused his attentions thereafter. She testified he tried to go with her to a supper and dance, the night he assaulted her, but she refused to permit him to do so. She had a companion, a negro woman, who lived with her, and they together that night went to said supper and dance, and that about the time she started home appellant saw and accosted her,—she swore as follows:

"He was about five feet from me when he called me and asked me if Janie told me that he wanted to see me, and I said: 'I don't want to see you'; and he said: 'I told you I want to see you'; and I said: 'Well, I don't want to see you,' and I says: 'Anyway, I told you I don't want to go with you. Why don't you let me alone?' And I said: 'Well, the best thing for me to do is to put the white people behind you and you will let me alone.' At that time he had hold of me by the collar, but when I said what I did, he turned me loose, and I went back to the supper, where I stayed for half an hour or longer, bought me some fish and started home, and when I got outside of the gate I told Janie Cooks to hold my fish, that I wanted to go back in there and speak to my sister-in-law; and when I started back Harrison Scott asked me where in the hell I was going, at which time he was about eight feet from me. He said: 'Where in the hell are you going?' I said: 'Harrison, please let me alone, I don't want to go with you no more'; and he said: 'You was going to put the white folks behind me, and I will give you something to put them behind me for.' He said: 'Anyway, you said you was going to put the white folks behind me, and I will give you something to put them behind me for'; and he pulled out his pistol from his left side and shot at me six times, hitting me three times—in the left side under the nipple, in the right leg above the knee and in the left arm. The pistol he shot me with was a .38, and he was about eight feet from me when he did the shooting. When he shot me in the side, I never fell, but when he shot me in the leg I fell, and when I fell, he walked up to me and shot at me three more times; and as I fell, I pulled Janie Cooks down on me, and while Janie was down, he shot again, but did not hit me, and then he shot three more times and hit me in the left arm—while I was on the ground—and then he turned off, but came back and hit me twice on

my head with the pistol, causing two scalp wounds, and when the doctor dressed them he took one stitch in each wound. After I fell I said: 'Harrison, please don't shoot me any more, I will let you go with me'; and he said: 'G—d d—n you, I don't want to go with you now, I will kill you.' He made these remarks while he was shooting. He walked off from me about fifteen feet before he came back and hit me with the sixshooter. When he came back to hit me he never said anything, but hit me and ran."

The witness Janie Cooks's testimony fully and in detail corroborated that of Virginia Thomas.

It is unnecessary to give the appellant's testimony, except to state that, in substance, he claimed that he shot the woman in self-defense, she coming on him with a knife threatening to kill him, and that he shot the first three shots not to hit but to prevent her from cutting him, and that when he did not succeed by this means, he proceeded to shoot her in self-defense.

There was more or less testimony corroborating each side by two other eyewitnesses who were present.

The offense was committed in July, 1915. Appellant was indicted early in September following, and in the latter part of the month his case was then called for trial, but on his application because of the absence, as we understand, of the same witnesses who were absent on this occasion, he secured a continuance. When the case was called for trial at the subsequent term, the State announced ready, and he called for his witnesses, when five of them appeared to be absent. That when he discovered this, he orally asked the judge for an attachment for them, stating that if he could get an attachment, he could secure three of the witnesses in two or three hours, and the others in at least five or six hours. Evidently his application for an attachment at this time was merely oral, and his bill on the subject shows no legal ground whatever therefor. Clearly, he was not entitled to an attachment under the law, and the court committed no error in refusing to order one at that time.

His next bill complains of the court's overruling of his second motion for a continuance on account of the absence of these witnesses. It may be conceded that if the absent witnesses would have testified what he alleged they would, they would have been material for him. Considering the whole record and the testimony, we think they would not have so testified, or if they had, that their testimony would have been untrue. His amended motion for a new trial was filed and acted on ten days after his conviction. He attached no affidavit of any of his absent witnesses thereto that they would testify to what he claimed in his motion they would. The record and his bills show that two of these witnesses were at Brazoria, twelve miles from the county seat, Angleton, where the trial was had; that there was a perfect telephone connection between Angleton and Brazoria; that one of the deputy sheriffs lived at Brazoria; that there was an automobile service for hire at both of these towns; and that the roads were in good condition;

that a trip from one to the other and back could have easily been made within an hour. Neither of these witnesses had ever been summoned. That the other witness lived at Bay City, in Matagorda County, adjoining Brazoria County. That good telephone connections existed between Angleton and Bay City and that the roads between these towns were good and an automobile rent service between the two was at both places. And the attendance of the other witness could have been had within four or five hours. And that there were also two daily passenger trains between Bay City and Angleton. Thus it is shown by appellant himself that if he had used any sort of diligence he could have secured the attendance of all three of his witnesses and had the benefit of their testimony on this trial. He was not entitled to an attachment. He could have procured a subpoena at any time, and it was his duty to do so, as many times held by this court (see Mitchell v. State, 36 Texas Crim. Rep., 278; Giles v. State, 66 Texas Crim. Rep., 638, 148 S. W. Rep., 317, and cases cited), as soon as he found his witnesses were absent, and they could have been procured within the time he showed they could, and had them to testify. By his own showing, doubtless, if he had attempted, he could have secured the attendance of these witnesses by telephone communication to them when he discovered their absence, and even after his motion for a continuance had been overruled. His showing is such as clearly to show he was entitled to no continuance, and no new trial, on account of the absence of any or all of said witnesses. It is unnecessary to collate the many authorities so holding.

The court committed no error in refusing to permit him to prove by a witness, Gaddison, that Virginia Thomas was a woman of loose character and in the habit of being indecently familiar with other men. Such testimony was inadmissible as affecting her credibility. Neither did the court err in refusing to permit him to prove to the jury on the trial by the sheriff that if he had an attachment, he could have secured the attendance of his witnesses. Such evidence was not for the jury.

We think appellant's objections to the charge of the court on the suspended sentence law was not well taken. But if they were, it was harmless and passed out of the case in view of the fact that the jury assessed a penalty of ten years in the penitentiary. They could not, with that penalty assessed, have recommended a suspension of his sentence.

Appellant has two bills to the argument of the district attorney. Neither presents any error. The district attorney had the right to insist that the jury should inflict the highest penalty of fifteen years in the penitentiary if in his judgment the evidence so justified, and from the State's testimony he was clearly justified in so insisting, and his stating that fifteen years was inadequate to give the defendant, and that the citizenship should be rid of his dirty presence for at least that length of time, presents no ground for reversal. The other argument complained of, as qualified by the court, shows that the district attorney

was not purporting himself to testify before the jury about the testi-mony of Virginia Thomas before the grand jury, but was commenting on her testimony on that subject when it was shown that the defendant was seeking to impeach her on the subject.

The penalty for the offense for which appellant was convicted is from two to fifteen years confinement in the penitentiary. The jury in this instance assessed the punishment at ten years. It has always been held by this court that the amount of the punishment fixed by the jury, if within the time prescribed by law, is binding on this court, and this court is unauthorized to set it aside.

Nothing else is presented for review, and the judgment is affirmed.

*Affirmed.*