## JIM THOMPSON v. THE STATE.

### No. 6629. Decided January 25, 1922.

### Rehearing Denied March 8, 1922.

1.—Robbery—Deadly Weapon—Death Penalty—Sufficiency of the Evidence Corpus Delicti.

Where,. upon trial of robbery by the use of a deadly weapon, the State did not rely solely upon the confession of the defendant to prove the *corpus delicti*, and the facts presented a most cold-blooded, inhuman, and unprovoked attack made upon sleeping inmates of the house, etc., the conviction assessing the death penalty is sustained.

2.—Same—Charge of Court—Robbery—Punishment—Article 743 C. C. P.

Where the court erroneously instructed the jury that the penalty was death or penitentiary for life, or for any term not less than five years, and the jury found the defendant guilty and assessed his punishment at death, *held*: that the court's charge being correct as to the minumum and maximum penalty given, the mistake of the court of inserting in the charge an intermediate punishment not authorized by law was not reversible error, under article 743, C. C. P.

3.—Same—Case Stated—Charge of Court—Mistake—Rehearing.

Believing the conviction was fully authorized under the evidence, and that the mistake in the court's charge could in no way have harmfully affected the appellant's rights in the jury's consideration of his case, the motion for rehearing is overruled.

Appeal from the District Court of Grimes. Tried below before the Honorable Carl T. Harper.

Appeal from a conviction of robbery by the use of deadly weapons; penalty, death.

The opinion states the case.

*Rogan & Mendell*, for appellant.

*R. G. Storey*, Assistant Attorney General, for the State.

HAWKINS, JUDGE.—Conviction is for robbery by the use of a deadly weapon, punishment being assessed at death.

No bills of exception appear in the record. There seems to have been no objection whatever to the charge of the court, and no special charges were requested.

The sole question suggested is the sufficiency of the evidence to support the conviction and penalty. In the month of June, 1921 there lived in the town of Navasota one B. Isenberg; his son-in-law, Ben Silverstein and his wife, the daughter of Isenberg, living with him. Isenberg and Silverstein were engaged together in business of some kind, and Mrs. Silverstein worked in the store with them. Their living quarters were upstairs over the store. Some time during the night of June 23d, while Isenberg was asleep appellant made an assault on him with an axe and inflicted serious injury about his head and throat from which he remained for many days in the hospital. Mrs. Silverstein, who, with her husband, was sleeping in a room across the hall, heard a noise of some kind which awakened her; she turned on the light and went into her father's room and there she saw and recognized appellant who had at one time worked in a store adjoining Isenberg's. Appellant had an axe in his hand at that time and Mrs. Silverstein noticed blood on the bed and on her father; upon asking appellant what he was doing there, calling him by name, he knocked her down upon a cot or lounge, not, however, striking her with the axe. He struck her several times with his other hand and her screaming awakened her husband, Ben Silverstein, who started across the hall into the room. Appellant, hearing him, stepped behind the curtains of the door and as Silverstein started to enter struck him with the axe, knocking him back into the hall. Mrs. Silverstein having gotten away from appellant, turned and ran through a window on to an awning and continued to scream. Isenberg, in a semi-conscious condition, staggered into the hall and was again struck on the head with the axe. Only a small amount was secured by appellant, being about two dollars in money and some keys on a ring downstairs in a storage room a hat and some shoes which were identified as appellant's. About three days later when he was arrested he made a confession, admitting that he had secreted himself in the store room and had been locked up in there on the night of the robbery. The following is his confession:

"On the night of the attack I made on Mr. Isenberg last night one week ago, I thought Mr. Isenberg had some money. I had known him three or four years. I was lying on some sacks down stairs in the junk room, hidden so they would close me up when they closed up the store. I knew how the entire building was arranged and when I woke

up I went upstairs to rob Mr. Isenberg and Mr. Silverstein. I carried the axe that I struck them with upstairs with me. When I got upstairs I hit Mr. Isenberg while he was asleep. I was hitting at his head. I hit him so that I would be able to get the money I thought he had. I was trying to rob them and thought Mr. Isenberg had money about him in bed and hit him so that I could get the money. I had seen Mr. Isenberg with right smart money the evening before, Wednesday evening. I hit Mr. Silverstein when he came in the room and ran off as soon as I got loose. I got the keys belonging to them before I left the building at the stair way. I was not mad at either of the parties when I hit them.''

The confession shows a premeditated and carefully planned attack on the part of the appellant for the sole purpose of securing a sum of money which he thought Mr. Isenberg had somewhere about the premises. The State is not relying upon the confession alone to prove the corpus delicti, as that is established unquestionably by other evidence. Both Silverstein and Mrs. Silverstein recognized appellant. The two dollars which appellant got was taken off of a table in Mrs. Silverstein's room and the key ring from the desk downstairs in the store. Isenberg and Silverstein were engaged together in business. The possession of the property was correctly alleged in Isenberg, it being in their joint possession. It is suggested in the motion for new trial that the penalty inflicted is out of proportion to the crime proven. We have not been able to bring our minds in accord with this proposition. The amount of property secured is insignificant, it is true, but the motive which prompted the crime was evidently the hope of securing property of greater value. The assault shown by the evidence to have been made upon both Isenberg and Silverstein was of a deadly character and made with an instrument, which, in the manner used, was calculated and likely to produce death, and the fact that death did not result therefrom is of an accident than lack of design on the part of appellant. We are not aware of a case presenting a more cold-blooded, inhuman and unprovoked attack made upon sleeping inmates of a house for the sole and only purpose of securing to the perpetrator an opportunity to secure for himself money or property belonging to those upon whom the attack was made. We do not feel inclined under the facts of this case to say that the jury was without warrant in assessing the penalty of death.

The judgment of the trial court is therefore affirmed.

*Affirmed.*

ON REHEARING.

March 8, 1922.

HAWKINS, Judge.—For the first time on motion for rehearing our attention is called to the fact that the trial judge committed an error in charging the penalty. No exception was filed calling the

court's attention to the mistake at the time the charge was submitted for inspection, and no mention is made of it in the motion for new trial. Article 1327 P. C. (Acts 1895) fixes the punishment for robbery where firearms or deadly weapons are used at "death, or by confinement in the penitentiary for any term not less than five years." Prior to the amendment of 1895 the punishment in such cases was by "imprisonment in the penitentiary for life or for a term not less than five years." The court charged the penalty to be "death, or by confinement in the penitentiary *for life,* or for any term not less than five years." It is urged that because the court erroneously inserted "for life" in the charge on the penalty the case must be reversed. We are cited to Gardenhire v. State, 18 Texas Crim. App. 565 as authority for the proposition. It is one of a long line of cases which held that any mistake as to the penalty would cause a reversal although the error was in behalf of the defendant. (See also to the same effect Howard v. State, 18 Texas Crim. App. 348; Wilson v. State, 14 Texas Crim. App. 524; Bouldin v. State, 8 Texas Crim. App. 624; Buford v. State, 44 Texas 525.) That line of cases has long ago been abandoned by our court as may be seen by an examination of the authorities collated under Sec. 644 Branch's Anno. P. C. in which he states the rule to be that, "The charge of the court is not reversibly erroneous because the penalty is misstated if the accused was awarded the minimum punishment."

There is another line of authorities turning upon the construction and application of Article 743, C. C. P., notably Manning v. State, 46 Texas Crim. Rep. 326; Graham v. State, 73 Texas Crim. Rep. 28, 163 S. W. Rep. 726; Clayton v. State, 78 Texas Crim. Rep. 165; Grider v. State, 82 Texas Crim. Rep. 124, 198 S. W. Rep. 579. In Manning's case a mistake was made in the minimum punishment. The penalty provided by the law was not less than two nor more than ten years. The jury were told it was not less than five nor more than ten. The punishment was fixed at seven years. The judgment was affirmed over a dissenting opinion. The correctness of the decision was questioned in Clayton's case. By citing the Manning case we do not wish to be understood as committing ourselves to the correctness of the announcement in the particular mentioned.

We are not inclined to go back to the old line of decisions and hold that a mistake in charging the penalty is such a fundamental error that a reversal will necessarily follow regardless of the nature of the mistake. We however are inclined to the view that a mistake as to the penalty is such an error as that no matter when raised, we should consider it, and that the spirit of Article 743 C. C. P. should control, and this court determine whether any injury could or did result from the error.

Examining the instant case we have been unable to determine how any possible injury resulted to appellant from the mistake in the court's charge. If his punishment had been assessed by the jury at confinement in the penitentiary for life, (the present statute not

authorizing that punishment) we would have an entirely different question before us. The court was correct in the minimum and maximum punishment given to the jury. The mistake occurred in inserting an intermediate punishment not authorized by the law. The jury believed, and were authorized in reaching the conclusion under the evidence, that the crime committed by appellant was of such a character that the maximum punishment of death should be inflicted, and passed over the unauthorized intermediate punishment. On account of the severity of the penalty inflicted we have been at some pains to investigate the question raised on motion for rehearing, and unless we felt fully assured as to the correctness of our holding we would not permit the conviction to stand.

We cannot see how the inadvertent insertion of "for life" in the penalty could in any way have influenced or been responsible for the death penalty assessed. The jury declined to assess the penalty at a term of years, evidently believing the offense called for nothing less than the extreme punishment.

Believing it was fully authorized under the evidence, and that the mistake in the court's charge could in no way have harmfully affected appellant's rights in the jury's consideration of his case, we are of opinion the motion for rehearing should be overruled.

*Overruled.*