PAUL J. SULAK V. THE STATE.

No. 14160.   Delivered May 13, 1931.
Rehearing Denied June 24, 1931.

The opinion states the case.

*Rose & Sample,* of Edna, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, Judge.—The offense is making a false entry in a book of a state bank; the punishment, confinement in the penitentiary for six years.

As shown by bill of exception No. 1, appellant moved to quash the indictment on the ground that it was not returned by a legally constituted grand jury. We quote the qualification of the court appended to the bill of exception as follows

"At the time defendant's motion to quash said indictment was called to the attention of the court and overruled by me, I learned for the first time that the clerk had not then entered on the minutes of said court the written order which I had actually issued and signed, directing the reconvening of the grand jury, whereupon, said term of court still being in session and the minutes for the term not having been at the time signed by me, I directed the clerk of the court to complete the minutes, whereupon he entered in the minutes of said court in Volume "I", at page 472 of said minutes, the folowing written order of said court, duly signed by me, and made prior to the reassembling of said grand jury, to-wit: 'The grand jury for the Fall term, 1930, of the district court of Jackson County, Texas, having been discharged by the Court on September 23, 1930, and it now appearing to the court that there are matters of great importance to the public welfare which should be investigated immediately by the grand jury, it is ordered by the court that the order of this court entered at a previous day of this court, to-wit, on September 23, 1930, discharging said grand jury for the term be and the same is set aside; and it is further ordered that said grand jury shall reassemble as such on the 2nd day of October, 1930, at 9 o'clock A. M., at the courthouse in this county, in Edna, Texas, for the purpose of a further discharge of their duties as such grand jury; and the clerk of this court will issue process to the sheriff directing him to summon said grand jurors to reassemble in accordance herewith.' This order was actually made and signed by me, and handed to the clerk at the time I ordered grand jury reassembled."

It appears from the bill of exception that two of the members of the grand jury did not reappear in response to the order of the court. One of said members was too ill to do further service, and the other was out of the county. The court ordered the sheriff to summon two new jurors in their stead. When the two new members appeared the court examined the grand jury under oath touching their qualifications,

and the ten members of the original grand jury, together with the two members summoned to take the place of those who had failed to reas· semble were duly sworn and impaneled. The specific contention seems to be that the grand jury returning the indictment was composed of fourteen members. We deem appellant's position untenable. Article 372, C. C. P., reads as folows:

"A grand jury discharged by the court for the term ·may be reassembled by the court at any time during the term. If one or more of them fail to reassemble, the court may complete the panel by impaneling other men in their stead in accordance with the rules provided in this chapter for completing the grand jury in the first instance."

It is clear from the bill of exception that the grand jury had been finally discharged for the term. When the grand jury has been discharged for the term and reassembled during the same term the statute itself authorizes the court to impanel other men in the stead of those failing to reassemble. Milliken v. State, 107 Texas Crim. Rep., 332, 296 S. W., 547.

The opinion is expressed that the failure of the clerk to enter up the order of the court reassembling the grand jury until after the motion to quash had been overruled did not have the effect of rendering the grand jury an illegal body. The trial judge actually prepared a written order reassembling the grand jury and this order was entered in the minutes of the court at the same term at which it was made. See Ex parte McGraw, 102 Texas Crim. Rep., 105, 277 S. W., 699.

Further, in his motion to quash the indictment, appellant averred that the law under which he was prosecuted was unconstitutional in that the caption of chapter 95, Acts of the 40th Legislature at its First Called Session, amending article 545, Penal Code, is misleading and insufficient. The title reads as follows: "An Act Amending Article 545, Revised Criminal Statutes, 1925 and Creating an Emergency." The specific contention is that the caption is misleading in that we have no Revised Criminal Statutes, 1925. We deem it unnecessary to determine whether the caption is sufficient. The sole effect of the amendment was to reduce the minimum penalty for the offense defined in article 545, Penal Code, from five to two years. The definition of the offense was in nowise changed. The penalty assessed against appellant was six years confinement in the penitentiary. We are unable to see how any possible injury could have resulted to appellant from a misstatement in the charge of the minimum penalty. If it should be conceded that the Act amending article 545, Penal Code, is unconstitutional,—and this is not conceded,—appellant would have been amenable to prosecution under article 545. If appellant had received less than five years he would be in a better position to question the constitutionality of the Act. This court stated in Thompson v. State, 237 S. W., 926, that a mistake in the

charge as to the penalty was such an error as that, no matter when raised, we should consider it. In the same connection, however, it was said that the spirit of article 666, C. C. P., should control in determining whether any injury could or did result from the error. We quote article 666, in part, as follows:

"Whenever it appears by the record in any criminal action upon appeal that any requirement of the eight preceding articles has been disregarded, the judgment shall not be reversed unless the error appearing from the record was calculated to injure the rights of defendant, or unless it appears from the record that the defendant has not had a fair and impartial trial."

Bill of exception No. 3 sets forth the copy of the charter of "The Citizens State Bank of Ganado." The name of the bank was alleged in the indictment as "Citizens State Bank of Ganado, Texas." Appellant objected to the reception in evidence of the charter on the ground that there was a variance between the name of the bank set forth therein and that alleged in the indictment. The objection was not well taken. Appellant was advised by the averments in the indictment that the bank transacted its business in the town of Ganado, Jackson county, Texas. While a part of the name, the term "Ganado, Texas" would be commonly understood as referring to the place where the corporation was transacting its business. Appellant could have been in no manner misled as to the bank intended by the pleader. It is our conclusion that the variance is not fatal. Putnam v. United States, 162 United States, 687, 40 L. Am. Ed., 1118, 16 S. Ct., 923; King v. State, 113 Texas Crim. Rep., 130, 19 S. W. (2d) 52.

We think it was proper for the state to prove that appellant had stated that he had unlawfully taken approximately $34,000 from the bank. The fact that appellant's declaration disclosed the commission of another offense did not preclude its use by the state to prove that appellant knew the entry was false when he made it. Appellant was not under arrest or in custody at the time he made the admission.

Bill of exception No. 12 reflects an objection to the testimony of T. N. Mauritz and W. W. Dees touching the total individual deposits of the bank on January 9th and 10th, 1930. The bill contains a mere statement of grounds of objection. A mere statement of a ground of objection is not a certificate on the part of the trial judge that the facts which form the basis of the objection are true; it merely shows that such an objection was made. Branch's Ann. P. C., sec. 209; Buchanan v. State, 107 Texas Crim. Rep., 559, 298 S. W., 569. It may be added that Mr. Mauritz testified without objection that he discussed the shortage of $34,000 with appellant, that is, the fact that the entry of $151,157.36 made on January 9, 1930, did not properly reflect the individual deposits. According to his version, appellant stated to him

that the item of $184,433.61 determined upon by the witness Mauritz as the individual deposits on the date in question was correct. We quote the testimony of the witness at this point as follows:

"At the time that Mr. Sulak (appellant) was there alone with me we discussed this shortage and we discussed the amount of it as it had been determined by Mr. Dees and myself and he said to me that was correct, that he had taken about $34,00.00 from us. He also told me that he had covered upon this shortage by carrying the wrong balance into the general ledger, under the account of individual deposits. He did not at that time state how long he had been carrying this wrong amount but he did at a later date. He told me at a later date, I believe, in January or February, that he had taken about $34,000.00. * * * As to how he protected himself on the books, he stated he had carried false accounts forward into the general ledger, so this general ledger did not show the true figures. We only discussed this individual ledger item. I did not discuss the other items with him that I recall. I just discussed with him concerning the individual deposits; this large difference here."

The admissions of appellant testified to by the witness carried substantially the same information to the jury as did the statement by the witness that the individual deposits on the date in question were $184,-433.61 instead of $151,157.36.

Appellant objected to the charge of the court on the ground that it failed to embrace an instruction covering the law of circumstantial evidence. We are unable to reach the conclusion that the objection was well taken. The evidence was direct that appellant made the entry of $151,157.36 in the book described in the indictment, and that such entry was intended to convey the impression and indicate that on January 9, 1930, the total amount of individual deposits with said bank was $151,-157.36. In discusing this entry with Mr. Mauritz, appellant admitted that it was false. He said he had taken about $34,000 of the bank's money and had carried false amounts forward into the general ledger in order to cover up the shortage. Mr. Mauritz testified: "We only discussed this individual ledger item. I just discussed with him concerning the individual deposits; this large difference here." Appellant admitted to Mr. Mauritz that a correct entry would have been $184,433.61, which amount would have correctly reflected the individual deposits on the date in question. Appellant was assistant cashier and agent of the bank. It was his duty to keep the book in which the entry was made. He offered nothing to controvert the state's proof that he had embezzled $34,000 of the bank's funds and had made the false entry in question to cover up the shortage. We deem appellant's confession of guilt to be unequivocal. Hence the charge on circumstantial evidence was not

required. Section 1874, Branch's Ann. Tex. P. C.; Barnes v. State, 53 Texas Crim. Rep., 628, 111 S. W., 943.

Appellant makes the contention that there is a variance between the proof and the allegation to the effect that the entry was made "under the heading Thursday, January 9, 1930, Dr. Balance." He takes the position that the proof shows that the figures occur under the heading "Cr. Balance." The bill of exception bringing the matter forward is qualified as follows:

"The page of the general ledger under discussion was divided into several columns, each column representing a different day's business. The column, which was headed, at the top of the page, 'Thursday January 9, 1930, Dr. Balance' ran clear through to the bottom of the page, and tho from the middle of the page down it became the Cr. Balance, and the page there so read, but the general head of the column, at the top of the page, did read as stated above. And it was further proved by the district attorney that this book was kept by the defendant, and that he was thoroughly familiar with it, and that he could not have been misled by the evidence offered. And the figures $151,157.36 appeared only once on said page, and that was in this column which did have the heading 'Thursday January 9, 1930, Dr. Balance' at the top of the page, and upon a sheet in the general ledger, Vol. 7, showing the total of individual deposits with said bank for January 9, 1930, and upon line 15 of the section of said page dealing with liabilities of said bank, as alleged in the indictment."

The qualification of the court is supported by the evidence. We find no fatal variance.

Other bills of exception are contained in the record which we deem it unnecessary to discuss. A careful examination of all of appellant's contentions leads us to the conclusion that reversible error is not presented.

The judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—In his able and courteous motion for rehearing appellant insists that we were wrong in declining to reverse this case because of the fact that the trial court in stating the penalty to the jury gave the appellant, as the court below evidently thought, the benefit of a new statute, by the terms of which the minimum penalty for the offense charged had been reducd from five years to two. It is true that at the time the court gave this charge appellant objected and

excepted to the giving of same upon the ground that the law changing the penalty was unconstitutional. We have followed the interesting discussion in appellant's motion of the notations of what is now our article 666, C. C. P., but are constrained to hold that we are bound by the proposition contained in said article of the statute that a case shall not be reversed even for an error in the charge, unless such error be one calculated to injure the rights of the defendant. Whether the ameneded statute changing the penalty be constitutional or not,—it still seems impossible to conceive that an instruction to the jury to fix the penalty in case of guilt at not more than ten nor less than two years, could have hurt appellant, conceding for the argument that the trial court should have instructed the jury to fix the penalty in case of a verdict of guilty at not more than ten nor less than five years. The verdict fixed by the jury was within either statute,—the old or the new. We think Judge Hawkins' discussion of the matter in Thompson v. State, 91 Texas Crim. Rep., 234, 237 S. W., 926, presents a correct view. As said by Judge Davidson in Ramirez v. State, 43 Texas Crim. Rep., 455, 66 S. W., 1101, in which the penalty was incorrectly stated, but the lowest penalty was fixed: Under the decisions of this court construing article 723, (now article 666) Code of Criminal Procedure, this error was not calculated to injure appellant's rights.

We have again examined bill of exception No. 12 presenting objection to the testimony of Messrs. Mauritz and Dees. The bill states that the appellant objected to the testimony of these gentlemen as to the total individual deposits shown by the individual deposit ledger of the bank in question, on the ground that the individual ledger deposit accounts themselves were the best evidence of the amounts of such deposits, and that the testimony of said witnesses as to the total of such several balances was merely the conclusion of the witnesses. The bill states no facts supporting or making clear the validity of such objection. For aught we know from the bill, the witnesses may have had the individual deposit ledger before them, and may have been stating their contents from a then examination. It is necessary for a bill of exception to state facts from which this court may know that the objections taken are true and supported.

It is also insisted that the court below erred in declining to grant a continuance. We would not be inclined to hold that one representing a person accused of crime, might depend upon the court quashing the indictment, and offer this as a reason why he had not procured subpoenaes for absent witnesses, or taken active steps to inform himself about matters material to his defense. As far as we are informed by the record, no effort was made by appellant in any way to show by an examination of the books of the bank during the trial, that the individual deposit ledger whose contents were offered in evidence, did not properly reflect

the facts. No effort seems to have been made to cause the books to be produced by a subpoena duces tecum, if indeed the books were not present. The testimony for the state to the effect that appellant admitted that he had falsely kept the individual deposit ledger so that he might thereby defraud the bank, seems not to have been disputed by any testimony. We see no error in the action of the court in declining to grant the continuance, which was asked in order that appellant might have time to examine the books of the bank. We do not think the court abused his discretion in the matter.

The charge against appellant was making a false entry, which consisted in the entry of an aggregate sum in the individual deposit ledger purporting to show the amount of the assets of the bank as of a certain date. We do not see just how the court below could be deemed to have committed an error following the admission of testimony of the false entry showing a wrong total of assets on that day,—in permitting it to be shown that on a particular day about this time appellant received a deposit of $650, which was entered on said ledger as a deposit of $65.

We believe the case correctly decided, and the motion for rehearing will be overruled.

*Overruled.*