**Steven Lee JEWELL, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 58315–58321.**

Court of Criminal Appeals of Texas, Panel No. 1.

Nov. 29, 1978.

On Rehearing March 28, 1979.

On Rehearing Feb. 6, 1980.

Emmett Colvin and David L. Botsford, Dallas, for appellant.

Tom O'Connell, Dist. Atty. and Verla Sue Holland, Asst. Dist. Atty., McKinney, Jack M. Pepper and David K. Haynes, Asst. Dist. Attys., McKinney, for the State.

Before DOUGLAS, PHILLIPS and W. C. DAVIS, JJ.

OPINION

PHILLIPS, Judge.

This is an appeal from seven felony convictions for delivery of various controlled substances based on a consolidated trial and plea of guilty before the jury. Punishment was assessed as follows: 15 years in our Cause Nos. 58,315, 58,316, 58,317, and 58,318 (delivery of cocaine); 10 years in our Cause Nos. 58,319 and 58,320 (delivery of Tetrahydrocannabinol); and 5 years in our Cause No. 58,321 (delivery of marihuana).

Appellant's first ground of error complains of the trial court's response to the jury's question propounded to the court after it retired to deliberate during the punishment phase of the appellant's trial. The question:

"If prison sentences are given as punishment, are the terms concurrent or each served separately?"

elicited the court's following oral answer:

"I will answer your question, Sir, by simply reading you Article 303 of the Texas Penal Code [sic].

"Our law further provides that 'when the accused is found guilty of more than one offense arising out of the same criminal episode prosecuted in a single criminal action, sentences for each offense for which he has been found guilty shall be pronounced. Such sentences shall run concurrently.'

"And you are further instructed as the law in this case that you are not to discuss among yourselves how long the defendant will be required to serve these sentences you decide to impose, since as I advised you before, such matters come within the exclusive jurisdiction of the Board of Pardons and Paroles and the Governor of the State of Texas."

The defendant's attorney was advised before delivery of this answer to the jury what the court proposed to do and interposed the following objection:

"Your Honor, we object to the Court's additional instruction of the jury having been charged heretofore, and the submission of Article 303 [sic] to the jury based on the question that has been propounded to the Court.

THE COURT: Of course, you realize that every time this Court answers a jury's question it's an additional charge on the law?

MR. WARDEN [Appellant's trial attorney]: Your Honor, I don't feel that the matter that the jury has made inquiry into is properly before the jury. And which action of the Court I will accept [sic] to."

The issue before us upon this ground of error is not one of noncompliance with Article 36.27, V.A.C.C.P., although the court's answer to the jury's inquiry was not in writing as mandated by that provision. We also note that no objection to the *procedure* used was interposed. Rather, the issue before us is whether the court's answer to the jury's inquiry, which was erroneous and objected to, constitutes reversible error. The court's instruction was clearly erroneous in light of the express provisions of V.T.C.A., Penal Code, Sec. 3.01, which limits the application of the principles enunciated in Chapter 3 to Title 7 offenses, i. e., offenses against property. The instant prosecutions were pursuant to Article 4476–15, V.A.C.S., the Controlled Substances Act. Appellant is correct in stating that Article 42.08, V.A. C.C.P., is the correct law applicable to appellant's prosecution.[1] See *Morales v. State*, Tex.Cr.App., 416 S.W.2d 403; *Christopher v. State*, Tex.Cr.App., 489 S.W.2d 573; *Branson v. State*, Tex.Cr.App., 525 S.W.2d 187.

At the outset, we note that Article 36.27, V.A.C.C.P., requires the trial court to "first submit the question and also submit his answer to the same [the jury's question] to the defendant or his counsel or [sic] objections and exceptions, in the same manner as any other written instructions are submitted to such counsel, before the court gives such answer to the jury, . . . .." We conclude that there is a typographical error in the enrollment of the bill as noted above. Further, when read as intended, the statute clearly implicates the procedures of

1. "When the same defendant has been convicted in two or more cases, and the punishment assessed in each case is confinement in an institution operated by the Department of Corrections or the jail for a term of imprisonment, judgment and sentence shall be pronounced in each case in the same manner as if there had been but one conviction, except that in the discretion of the court, the judgment in the second and subsequent convictions may either be that the punishment shall begin when the judgment and sentence in the preceding conviction has ceased to operate, or that the punishment shall run concurrently with the other case or cases, and sentence and execution shall be accordingly."

Article 36.14, V.A.C.C.P., for preserving any error sought to be complained of on appeal. Although appellant's objection is reflected in the transcribed statement of facts, there is nothing in the record on appeal showing the endorsement of appellant's objections with the trial "court's ruling and official signature . . .." " Thus, appellant has failed to preserve his error under the terms of Article 36.14, V.A.C.C.P. See *Dirck v. State*, 579 S.W.2d 198 (1978).

However, this omission does not end our inquiry since appellant has alleged that the error addressed to our attention is fundamental in nature. Fundamental errors in a charge of the court have been defined by the Legislature as those which are "calculated to injure the rights of defendant." See Article 36.19, V.A.C.C.P. In addition, a reversal may yet follow if upon review of the record this Court concludes that the appellant was deprived of a "fair and impartial trial." *Id.* See also *Ashworth v. State*, Tex.Cr.App., 418 S.W.2d 668; *Peterson v. State*, Tex.Cr.App., 508 S.W.2d 844; *Smith v. State*, Tex.Cr.App., 513 S.W.2d 823; *Jefferson v. State*, Tex.Cr.App., 487 S.W.2d 331.

In an opinion approved by this Court, Commissioner Keith wrote in *Williams v. State*, Tex.Cr.App., 508 S.W.2d 83:

"... error therein [in a court's charge to which no objection was interposed] will be considered as fundamental error 'only in those cases where the erroneous charge goes to the basis of the case and is contrary to and fails to state the law under which the accused is prosecuted.' " *Id.* at 86.

See also *Bellah v. State*, 415 S.W.2d 418, 421; *Cleaver v. State*, 498 S.W.2d 945, 948. It was concluded in *Williams*, supra, that the trial court's failure to limit the jury's consideration of evidence on extraneous offenses did not constitute fundamental error absent an objection. See also *Henriksen v. State*, Tex.Cr.App., 500 S.W.2d 491. Although written in reference to the failure of the court's charge to apply the abstract propositions of law to the facts of the cause at the guilt or innocence phase of a trial,

this Court's statements concerning the role of the court's charge with respect to a determination whether such an omission was "calculated to injure the rights of defendant" in *Williams v. State*, 547 S.W.2d 18, are relevant to our decision here.

"However, this confidential character [of jury deliberations] also requires that the members of the jury, before deliberations, receive proper instructions regarding the performance of their civic duty. * * * There should be but one controlling application of the law to the facts, and that application should come from the court. Its absence impairs the right to trial by jury and, therefore, by definition, is 'calculated to injure the rights of defendant' (Art. 36.19, [V.A.C.C.P.]) to a trial by jury.

It is not the function of the charge merely to avoid misleading or confusing the jury: it is the function of the charge to lead and to prevent confusion." *Id.* at 20.

Cf. *Harris v. State*, Tex.Cr.App., 522 S.W.2d 199; *Perez v. State*, Tex.Cr.App., 537 S.W.2d 455; contrast *Mott v. State*, Tex.Cr. App., 543 S.W.2d 623.

Applying these principles to the case at bar, we note that the only issue (or "basis of the case") for the jury to deliberate upon was what punishment to assess against appellant. The instruction provided by the court at issue is "contrary to . . . the law." *Williams v. State*, Tex.Cr.App., 508 S.W.2d 83, 86. Thus, the jury did not receive "proper instructions." Although not a problem of no guidance, the jury was misled by the erroneous instruction involved. *Williams v. State*, Tex.Cr.App., 547 S.W.2d 18, 20.

By analogy, we draw additional support for our conclusion that the instant instruction was "calculated to injure the rights of defendant" (Article 36.19, V.A.C.C.P.) from those cases arising under Article 40.03, Sections 7 and 8, V.A.C.C.P., relating to the reception of new evidence and jury misconduct. Under those provisions we have held that a misstatement of the parole laws, asserted as fact and which adversely affects

the defendant, constitutes reversible error. *Scaling v. State*, Tex.Cr.App., 499 S.W.2d 318; *Spriggs v. State*, 160 Tex.Cr.R. 188, 268 S.W.2d 191; *Jackson v. State*, 157 Tex. Cr.R. 323, 248 S.W.2d 748; *Price v. State*, 150 Tex.Cr.R. 161, 199 S.W.2d 168; *Daniel v. State*, Tex.Cr.App., 486 S.W.2d 944; *Jones v. State*, Tex.Cr.App., 462 S.W.2d 578; *Meyers v. State*, Tex.Cr.App., 418 S.W.2d 676; cf. *Brewer v. State*, Tex.Cr.App., 500 S.W.2d 509. Allegations of error under Article 40.03, Sections 7 and 8, V.A.C.C.P., require evidentiary support. However, such a showing is not required here. Compare Article 36.19, V.A.C.C.P. Analysis of the alleged error is based on the complained of instruction and what its perceived effect would be on a jury.

Nevertheless, a misconception has developed in the review of erroneous penalty charges which implies a need to show harm. See *Daniels v. State*, Tex.Cr.App., 527 S.W.2d 549. A careful review of the authorities relied on in *Daniels* for the proposition that harm must be shown reflects that this Court concluded that if the error operated to the appellant's benefit, it could not be "calculated to injure the rights of defendant." Article 36.19, V.A.C.C.P. *Marks v. State*, 144 Tex.Cr.R. 509, 164 S.W.2d 690 (trial court failed to charge on Article 33, V.A.P.C., which would allow jury to double any penalty); *Fletcher v. State*, 137 Tex.Cr.R. 191, 128 S.W.2d 404 (charge limited punishment range from two to four years; law provided from two to ten years); *Christian v. State*, 135 Tex.Cr.R. 42, 117 S.W.2d 1094 (same as *Fletcher*, punishment assessed at two years); *Sulak v. State*, 118 Tex.Cr.R. 112, 40 S.W.2d 157 (appellant challenged constitutionality of amendment changing minimum term from five to two years imprisonment, charge was in accord with amendment, punishment assessed at six years); *Billings v. State*, 92 Tex.Cr.R. 628, 245 S.W. 236, 237 (charge provided a minimum penalty less than authorized by law; "manifestly in his favor"); *Thompson v. State*, 91 Tex.Cr.R. 234, 237 S.W. 926, 928 (on rehearing) (charge provided "life" as a possible penalty; law provided for "death" or any term of years not less than five;

punishment assessed at death: charge "could in no way harmfully affected appellant's rights"); *Grider v. State*, 82 Tex. Cr.R. 124, 198 S.W. 579 (charge provided range at two to five; law provided it at two to four; punishment assessed at three); *Bragg v. State*, 73 Tex.Cr.R. 340, 166 S.W. 162 (charge did not provide for respondeat superior penalty increase; not an issue and its omission benefited appellant); *Robbins v. State*, 57 Tex.Cr.R. 8, 121 S.W. 504 (charge provided less severe range of punishment than law authorized; punishment assessed at minimum fine). See also generally, *Graham v. State*, 73 Tex.Cr.R. 28, 163 S.W. 726; *Head v. State*, 160 Tex.Cr.R. 42, 267 S.W.2d 419; *Scott v. State*, 79 Tex.Cr.R. 474, 185 S.W. 994. The balance of the cases relied on in *Daniels*, supra, were decided before the Legislature amended what is now Article 36.19, V.A.C.C.P., in response to the numerous reversals of judgments on account of unobjected to errors in the court's charge. See *Dowden v. State*, Tex. Cr.App., 537 S.W.2d 5, Footnote 1. It is evident that the instruction before us for review here is materially different than those addressed in the *Daniels*-like cases. Here the jury was erroneously advised that, as a matter of law, appellant's punishments in the seven cases would be served concurrently.

There is another line of cases which holds that if appellant receives the minimum permissible penalty, any error in the court's charge will be considered harmless. See *McCoy v. State*, 122 Tex.Cr.R. 298, 54 S.W.2d 530; *Ramirez v. State*, 43 Tex.Cr.R. 455, 66 S.W. 1101; *Brown v. State*, 62 Tex. Cr.R. 592, 138 S.W. 604; *Green v. State*, 66 Tex.Cr.R. 446, 147 S.W. 593; *Clark v. State*, Tex.Cr.App., 78 S.W. 1078. It would seem that in such cases the end result negatives any conclusion that the charge was "calculated to injure the rights of defendant."

In the instant case appellant faced four first degree felonies (our Cause Nos. 58,-315–58,318, delivery of cocaine), carrying a range of punishment of life or any term of years not more than 99 or less than 5. Article 4476–15, Sections 4.03(b)(1),

4.02(b)(3)(D), 4.01(b)(1), V.A.C.S. Appellant was assessed 15 years' imprisonment as punishment in these causes.

Appellant received 10-year sentences on his third degree felonies[2] (our Cause Nos. 58,319 and 58,320, delivery of Tetrahydrocannabinol) which carry a range of punishment of not less than two nor more than 10 years' imprisonment and a fine of not more than $5,000.00. Article 4476–15, Sections 4.03(b)(2), 4.02(c)(N), 4.01(b)(3), V.A.C.S. We note that appellant's punishment in these two causes was the maximum possible term of imprisonment under the applicable law.

Appellant was assessed five years' imprisonment on his third degree felony for delivery of marihuana (our Cause No. 58,321). Article 4476–15, Sections 4.05(d) and (e), 4.01(b)(3), V.A.C.S.

Thus, we cannot conclude that the error in the trial court's instruction had no effect, was harmless, or was beneficial to appellant.

Finally, upon reviewing the charge of the court in its entirety (*Bailey v. State*, Tex. Cr.App., 532 S.W.2d 316), we cannot conclude that the admonition of the court for the jury not to consider *how long* appellant would serve any sentence they imposed vitiated the error so as to purge it of any harm. The court's answer to the jury's inquiry did nothing to lead the jury from the inappropriate consideration of *how* any sentences it imposed would be served. Again, the question is not whether jury misconduct has been established under Article 40.03, Sections 7 or 8, V.A.C.C.P., but whether the court's answer was "calculated to injure the rights of defendant." Article 36.19, V.A.C. C.P.

We therefore hold that under the unique facts of this case the trial court reversibly erred in answering the jury's question as it did. We would commend the trial court's

response to the same question in *Banks v. State*, Tex.Cr.App., 503 S.W.2d 582, should such an inquiry ever arise again. The *Banks* decision related to an allegation of jury misconduct based solely on the note and the appellant failed to carry the day without any other evidence.

Since this was a plea of guilty before the jury with the punishment to be assessed by same, we must reverse the judgment and remand for further proceedings. *Stein v. State*, 515 S.W.2d 104.

Appellant has also claimed on appeal that the trial court reversibly erred in permitting improper reputation questions to be asked of a defense witness by the prosecution. We here set forth the direct testimony of appellant's mother:

"Q Mrs. Jewell, it's extremely hard to hear in here so you'll have to speak up. For the record, state your full name and address.

A I'm Helen Jewell, 6916 Vine Ridge in Dallas.

Q You are the mother of Steve Jewell, are you not?

A That's correct.

Q All right. Now Mrs. Jewell, since February of 1977, Steve has returned and is residing in your home, is that correct?

A That's right.

Q During this period of time that we're talking about from February to date, have you been able to be around your son during this period? Does he stay home?

A Yes, he hardly goes out at all.

Q All right. He is working?

A He is working, yes, sir.

Q And other than that, he has maintained himself around the home. Does he go out at night?

A Very seldom.

Q All right. During any of these periods of time, Mrs. Jewell, have you

---

2. The court's charge in our Cause Nos. 58,319 and 58,320 (Trial Cause Nos. F77–016–R and F77–017–R, respectively) instructed the jury that the range of punishment was that applicable to a *second* degree felony. This was erroneous also. In light of our disposition on ap-

pellant's first ground of error, we need not determine whether this error is reviewable in the interest of justice as unassigned error (Article 40.09, Section 13, V.A.C.C.P.) or constitutes reversible error. We trust such error will not recur upon remand.

had any reason to believe, since February of 1977, that your son has either been using or having anything to do with drugs of any kind?

A I know he is not.

Q And let me ask you this, did you know prior to December 3rd, back during the period of time, say from December of 1976 until February the 3rd, that your son was involved in that activity?

A No, I didn't.

Q Mrs. Jewell, you are here before the jury today—are you asking this jury to give your son whatever consideration they can in connection with whatever sentence they pass and determine upon Steve?

A Yes, I am.

Q Are you telling this jury that if they see fit to possibly consider putting Steve on probation, that you and your husband, or specifically yourself, will do everything that you can to assist the Court in this supervision?

A Yes, we'll do everything that we possibly can to help him.

Q Do you think that since this period of time that we're talking about, from February 3rd to this date, you have seen any change in attitude of Steve concerning—

A Yes, I've seen a great deal of change.

Q Do you think he has learned anything from this experience—

MR. PEPPER: Objection, Your Honor. This witness cannot testify as to what the defendant has or has not done unless she knows of her own personal knowledge and can see inside his head.

THE COURT: If she knows, she can testify.

A (By Mrs. Jewell) Well he has changed a great deal since then.

Q (By Mr. Warden) Are these things that you have just observed in being around him during this period of time?

A Yes.

Q Do you think he has recognized and realized the enormity of the matter that is now in front of this jury?

A I know he does.

Q Do you feel that he has recognized or that he realizes that this is going to affect the outcome of his life, whatever the jury's determination is, whether it's probation or whether they send him to the penitentiary?

A He recognizes that very much."

It is clear from the direct testimony of appellant's mother that at no time did she place herself in the posture of a character witness testifying as to the appellant's reputation for being a peaceful and law-abiding citizen in the community in which he resides, either in those express terms or from an examination of the tenor of her testimony. Cf. *Childs v. State*, Tex.Cr.App., 491 S.W.2d 907. Her testimony was directed towards the appellant's behavior and actions since a date subsequent to the offense and of her intention to assist him in faithfully discharging any duties imposed upon him should the jury see fit to grant probation. Appellant had requested the jury to grant him probation. We believe the decisions of *Odum v. State*, Tex.Cr.App., 533 S.W.2d 1, and *Els v. State*, Tex.Cr.App., 525 S.W.2d 11, control the disposition of this ground of error. As stated in *Brown v. State*, Tex.Cr.App., 477 S.W.2d 617, 619–620:

"The general rule is that, as part of its cross-examination, the State is permitted to ask the character witness if he has heard of a specific act of misconduct.

\* \* \* \* \* \*

. . . The only requirement is that the act be inconsistent with the character trait about which the witness has testified. [citations omitted]

The rationale behind the rule is that reputation is an opinion based on hearsay. The reputation witness states his opinion based on that which he has heard from others concerning the defendant. In order to test this opinion, the prosecution is allowed to determine whether the witness has *heard* (not whether he *knows*) of acts or reports which would be inconsistent with a good reputation. \* \* \* Reputation does not concern that which a person *is*, but rather, that which he is thought to be."

Unlike the *Brown* case in which the witness testified on direct examination that the appellant had a reputation for being a peaceful person and *Childs v. State,* supra, where the witness admitted on cross-examination that the effect of his answers was to tell the jury that his son was "of good character" (*Id.* at 908), Mrs. Jewell testified only as to her observations of appellant while he lived with her subsequent to the time of these offenses.

In light of the facts of this case and appellant's request for probation, we must conclude that the prosecutor's cross-examination of appellant's mother with "have you heard" questions [3] constituted an additional ground of reversible error. We trust this will not recur on remand. The judgments are reversed and the causes remanded.

W. C. DAVIS, Judge, concurring in part and dissenting in part.

I agree that the judgment should be reversed due to the improper reputation questions asked by the prosecution of the appellant's mother, who testified for the defense as set forth in the opinion. See *Ward v. State,* 591 S.W.2d 810 (Tex.Cr.App.1978).

3. The following "have you heard" questions were propounded to the witness and her answers are included:

"Q Have you heard that he was arrested on August the 15th, 1972 in Dallas for violation of the State Narcotics Law?
[After an objection and motion in limine outside the presence of the jury, the trial court overruled appellant's objection that the questions introduced an extraneous offense and were inappropriate because Mrs. Jewell was not a reputation or character witness.]
Q Now I asked you if you had heard that he was arrested in Dallas on August the 15th, 1976, have you heard that?
A Is that what you asked exactly before?
Q Well, I asked if you had heard that he had been arrested for a violation of a controlled substance.
A No, he was not arrested for that.
Q But you had heard that?
A No, I had not heard that.
Q Have you heard that he was arrested in Ft. Worth in 1974 for possession of marijuana over four ounces?
A Yes.
Q Have you heard that he's been indicted in Denton County?
A Yes.

However, I dissent to the holding that the erroneous oral instruction given the jury by the court was fundamental error. No harm was shown to appellant; the outcome of the cases were the same, in that the court ran the sentences concurrently, as the jury was advised in the erroneous instruction. Further, there was no showing that the jury considered how long appellant would be required to serve. Clearly no harm or prejudice was shown. In *Daniels v. State,* 527 S.W.2d 549 (Tex.Cr.App.1975), we held:

"Now, however, the rule is well established that the submission of an incorrect charge on punishment does not require reversal of the judgment unless harm or prejudice is shown."

An attempt to overrule *Daniels,* supra, by asserting that the holding therein is a misapplication of the law is a grave mistake.

Before the court en banc.

## ON MOTION FOR REHEARING

DOUGLAS, Judge.

On original submission, the panel held that informing the jury that the sentences

Q For delivery of cocaine and delivery of hash?
A That is, I assume, part of this same thing that he's been tried for right now.
Q You had heard that?
A It was part of the same thing.
Q Did you hear that?
A Yes, I did.
Q Thank you. Now you say that you had heard about his arrest in Ft. Worth in '74?
A Yes.
Q That was while he was still living at home?
A No, he was living in Ft. Worth then.
Q Was he on his own then?
A You mean was he living alone?
Q Yes.
A Yes, he was living alone.
Q Did he move back to your house after that?
A Yes, he did. . . ."

We note, in addition to the foregoing discussion concerning the impropriety of propounding the "have you heard" questions to Mrs. Jewell, the detailed nature of the interrogation which demonstrates an effort to establish that the events which form the basis for the reputation questions in fact occurred. See *Odum v. State,* supra.

would run concurrently, when they did in fact run concurrently, was fundamental error. This conflicts with our holding in a long line of cases which were recently summarized in *Daniels v. State*, 527 S.W.2d 549 (Tex.Cr.App.1975). The panel also held that after a witness testified to facts which were indicative of appellant's good character, the State could not cross-examine her with "have you heard" questions concerning appellant's reputation. This conflicts with our holding in *Childs v. State*, 491 S.W.2d 907 (Tex.Cr.App.1973).

We grant the State's motion for rehearing and affirm the convictions. *Daniels* and *Childs* were well reasoned and sound opinions; we will follow them.

The panel held that it was fundamental error to charge the jury that the sentences they set would run concurrently because, even though the sentences did run concurrently, such a charge was calculated to injure the rights of appellant. In *Daniels*, we condensed our prior law into a simple rule:

"[T]he rule is well established that the submission of an incorrect charge on punishment does not require reversal of the judgment unless harm or prejudice is shown."

In the instant case, the court told the jury that the sentences would run concurrently. This was an incorrect statement; the court had the power to run the sentences either concurrently or consecutively. Appellant made no effort to inform the court that this was a misstatement of the law. The sentences ultimately did run concurrently. Appellant has not made any effort to develop evidence that indicates actual harm. Since the sentences did run concurrently we cannot see how appellant was harmed. In the absence of harm, no reversible error is shown.

The panel also held that, after appellant's mother testified about appellant's changed attitude and his lack of recent involvement with drugs, she was not a character witness and was not subject to cross-examination with "have you heard" questions. In *Childs v. State*, 491 S.W.2d 907 (Tex.Cr.App.1973), the father of the defendant was asked,

"And has his conduct been good since he has been there while he has been there at home?" He answered: "Really has." The Court stated:

"Appellant may not have a witness testify about his good character traits but avoid 'placing his reputation in evidence' simply by not specifically asking whether appellant enjoyed a good reputation in the community. The Court did not err in permitting the cross-examination."

We then held that it was proper for the prosecutor to ask if the witness had heard of an act inconsistent with Childs' good reputation.

In the instant case, appellant's mother testified to specific acts of good conduct. The prosecutor then cross-examined her concerning whether she had heard of acts inconsistent with appellant having a good reputation. The logic of *Childs* applies with full force. The relevant facts are the same. Appellant's mother testified to specific acts of good conduct; she was a character witness. Even though she did not specifically testify to "reputation", her testimony had the same effect as if she had. The prosecutor properly asked her "have you heard" questions.

There is no reversible error. The judgments are affirmed.

TOM DAVIS and DALLY, JJ., concur in the result.

ONION, P. J., ROBERTS, PHILLIPS and CLINTON, JJ., dissent for the reasons stated in the original opinion.

Before the court en banc.

## OPINION ON APPELLANT'S MOTION FOR REHEARING

DALLY, Judge.

Since we have recently overruled *Childs v. State*, 491 S.W.2d 907 (Tex.Cr.App.1972), the authority relied on in our opinion on the State's Motion for Rehearing, we must reconsider the appellant's ground of error in which he complains that the State has improperly allowed over timely objection to

ask "have you heard" questions of the appellant's mother during her cross-examination.

After he pled guilty before the jury the appellant attempted to gain the jury's recommendation for probation. His mother was called as a witness. She testified that since the commission of the offenses the appellant had lived with her in her home, his attitude had changed, he realized what he had done was wrong, and whether he went to the penitentiary or was granted probation would make a big difference in his life. She also testified that since the commission of these offenses he had been working, and that he was not using or involved with drugs.

The State during cross-examination of Mrs. Jewell was allowed to ask her:

"Have you heard that he was arrested on August 15, 1972, in Dallas for violation of the State Narcotics Law?"

*    *    *    *    *    *

"Now I ask you if you had heard that he was arrested in Dallas on August 15, 1976? Have you heard that?"

*    *    *    *    *    *

"Have you heard that he was arrested in Fort Worth in 1974 for possession of marihuana over four ounces?"

*    *    *    *    *    *

"Have you heard that he had been indicted in Denton County for delivery of cocaine and for delivery of hash?"

The State during the trial and in its brief on appeal in support of its position that the questions were proper relied on *Childs v. State*, 491 S.W.2d 907 (Tex.Cr.App.1972) and other cases which followed *Childs v. State*, supra. *Childs v. State*, supra, has been overruled since the opinion handed down on the State's Motion for Rehearing by *Ward v. State*, 591 S.W.2d 810, 816 (Tex. Cr.App.1979). Since the mother's testimony was not concerned with the appellant's general reputation for being a law abiding citizen in the community, the questions asked which are only appropriate to test a witness' knowledge of an appellant's reputation were improper, *Ward v. State*, supra.

This case cannot be distinguished from *Ward v. State*, supra, and from *Livingston v. State*, 589 S.W.2d 395 (Tex.Cr.App.1979); they are controlling in our disposition of this appeal. We need not reiterate fully what was so recently said in *Ward v. State*, supra, and *Livingston v. State*, supra. For the same reasons stated in those opinions the judgments must here be reversed. See also *Washington v. State*, 590 S.W.2d 493 (Tex.Cr.App.1979).

The appellant's motion for rehearing is granted and the judgments are reversed and the causes are remanded to the trial court.

DOUGLAS, Judge, dissenting.

The majority holds that the prosecution cannot ask "have you heard" questions of a witness after the witness has testified to good character traits of a defendant. In this case, appellant's mother testified to specific acts of good conduct by appellant, no doubt for the purpose of showing good character. Usually the way to prove good character is by proving good reputation. Here the defense has made a short cut by offering proof of good character instead of reputation.

"Have you heard" questions have been allowed in such instances in all previous cases. Now the Court overrules those cases for no good reason. If "have you heard" questions may be asked when proof of good reputation has been offered, such questions should be allowed when proof of the ultimate issue of character has been admitted. Again: reputation evidence is offered to prove character.

Since a defendant can now offer proof of specific acts of good conduct to show good character, it follows that the prosecution should be able to rebut a false impression by proving specific acts of misconduct. Otherwise, juries will be misled by proof that one is angelic without the chance of it being contradicted. It logically follows from the majority opinion that when witnesses testify to specific acts of good conduct on the part of a defendant, the State

should be able to ask if the witness knows about the defendant's specific acts of misconduct. False impressions should not be allowed before a jury without the opportunity to rebut them.

The appellant's motion for rehearing should be overruled.